[No. 13216.   Department One.   May 12, 1916.]

IDA M. GLAZE, *Respondent*, v. PULLMAN STATE BANK *et al.*, *Appellants.*[1]

HUSBAND AND WIFE—WIFE'S SEPARATE PROPERTY—TITLE—ESTOPPEL —IN PAIS.  A married woman holding separate property standing in her own name is not estopped to assert title thereto from the fact that her husband, in obtaining a loan, made a financial statement to the bank including her property as property which "we own," where, upon request, she refused to sign the statement, the husband had other property, and the bank did not rely wholly upon the statement; as there was no active participation by her, and the bank was bound to notice her record title.

SAME—WIFE'S SEPARATE PROPERTY—COMMUNITY DEBTS.  The wife's of improvements on the wife's separate property after marriage does not make it community property, where the wife paid for the improvements with her separate funds.

SAME—COMMUNITY PROPERTY—EVIDENCE.  The fact that a husband joined in a mortgage upon the wife's separate property is not conclusive evidence that the same was community property.

SAME—WIFE'S SEPARATE PROPERTY—COMMUNITY DEBTS.  The wife's separate property is not liable for the community debt of her husband.

Appeal from a judgment of the superior court for Whitman county, McCroskey, J., entered May 13, 1915, upon findings in favor of the plaintiff, in an action to restrain an execution sale.   Affirmed.

*D. C. Dow*, for appellants.

*M. S. Jamar* and *H. J. Welty*, for respondent.

MOUNT, J.—At the suit of the respondent, the trial court restrained the appellants from selling lots 6 and 7, block 11, of Reaney's Second addition to Pullman, in Whitman county, under an execution issued upon a judgment wherein the Pullman State Bank was plaintiff and H. A. Glaze, the husband of the plaintiff, was defendant.   This appeal is from that judgment.

[1]Reported in 157 Pac. 488.

It appears that, at the time Mrs. Ida M. Glaze was married to H. A. Glaze, she was the owner of the two lots in question. After their marriage, the lots were improved by the erection of two dwelling houses thereon. The evidence shows that these improvements were made from the separate funds of Mrs. Glaze. The property has all the time been held of record as her separate property.

Mr. Glaze, in the year 1913, was engaged in contracting work. He applied to the Pullman State Bank for a loan. The cashier of the bank at that time requested him to make a statement of his financial condition, and he made a statement wherein he said: "We own the following property: Lots 6 and 7, Block 11, Reaney's Second Addition to Pullman, $5,000." The statement also described other real estate and personal property; so that the total estimated value amounted to $13,540. This statement was signed by Mr. Glaze alone. Mr. Glaze testified that the cashier of the bank requested him to have his wife sign the statement; that he asked his wife to sign it and she refused to do so. Thereafter he filed the statement with the bank, and it subsequently made loans to him for which it afterwards sued him upon his personal promissory notes, and recovered a judgment for $3,436.70, with interest, attorney fees, and costs. Thereafter an execution was issued upon the judgment and levied upon the lots in question. Mrs. Glaze then brought this action, with the result above stated.

The appellants make two principal contentions: First, that Mrs. Glaze is estopped to deny the community character of the property levied upon; and second, if she is not so estopped, that the improvements which have been placed upon the property after marriage are community improvements; and that the property should be sold and the value of the wife's separate property deducted from the selling price, and the balance applied upon the judgment.

The estoppel claimed by the appellants is based upon the fact that H. A. Glaze furnished the statement of his financial

worth to the bank with the knowledge and consent of Mrs. Glaze; that the bank loaned the money relying upon that statement; and Mrs. Glaze is now estopped to say that the property is not community property.   The appellants cite *Curtis v. Janzen,* 7 Wash. 58, 34 Pac. 131, where it is said:

"The rule that whenever a person has held out another as his agent, or authorizes him to act in a given capacity, or has knowingly and without dissent permitted such acts, and accepted the fruits of them, he will be bound by such acts so far as necessary to protect innocent parties who have dealt with such agent, is so elementary and so well established that the citation of authorities in support of it is not called for here.   The testimony in this case is comparatively brief, but it convinces us that the allegations of the complaint are true; that the Janzens conspired together to fraudulently deprive the respondent of his rightful security, and Mrs. Janzen, being a party to such conspiracy, is estopped from urging the defense that she urges here."

It appears in that case that the Janzens had conspired together fraudulently to deprive the respondent in that case of his rightful security.   We think that authority does not apply here, because in that case there was an active participation of Mrs. Janzen in the conspiracy to defraud.   It is not claimed in this case that Mrs. Glaze actively or otherwise participated in any fraud.   When she was requested to sign the statement she refused to do so; and she never did sign it.   The statement upon its face shows that Mr. Glaze was worth about $8,000 over and above these two lots, which stood in the name of his wife as her separate property.   And while there is evidence in the record tending to show that the money was loaned to Mr. Glaze upon the strength of this statement, the evidence also shows that the bank did not rely wholly upon this statement, but relied upon Mr. Glaze's personal honor.   In other words, it does not appear in the record that the bank in making the loans to Mr. Glaze relied wholly upon this particular statement.   The fact that Mrs. Glaze refused to sign the statement does not, it seems

to us, make her an active participant in any false statement which was made by her husband to the bank, if any such statement were made. .

In a note to *Trimble v. State ex rel. Stevens,* 57 Am. St. 178, the rule is stated as follows:

"In order to estop a married woman by matter *in pais,* it must appear that there has been a false representation or concealment of material facts by her, and that the party to whom such representation was made, or from whom such facts were concealed must have been ignorant of the existence of the facts concealed or of the falsity of the representation and must have relied upon its truth."

There was no representation in this case by Mrs. Glaze at all. The only representation made was by Mr. Glaze. He said in the statement, "We own the following property." Among the property described were the lots in question. She made no such representation, and all she did was to refuse to sign the statement which her husband asked her to sign. There was, therefore, no active participation by Mrs. Glaze in any statement that was made by Mr. Glaze to the bank.

The deed to these lots, showing that the title stood in Mrs. Glaze was of record, and the bank, of course, was bound to take notice of that fact, especially when Mrs. Glaze did not sign the statement made by her husband. We do not think it was her duty, even though she knew her husband was borrowing money at the bank, to go to the officers of the bank and say to them that certain property which appeared of record as her separate property was her separate property. That fact was already apparent of record. We are, therefore, satisfied that there is no estoppel on the part of Mrs. Glaze to assert her title to the property.

The appellants next contend that, even if there is no estoppel, H. A. Glaze has a community interest in the property by reason of the improvements placed thereon after his marriage to Mrs. Glaze. The record shows that two houses were

built upon the lots after the marriage. One of the houses was built by Mr. Glaze, who was a contractor engaged in building houses. But the testimony is quite clear that Mrs. Glaze employed her husband to build the house, and paid him for it out of her separate funds.

The record also shows that Mr. Glaze joined his wife in executing a mortgage upon the lots. But the fact that Mr. Glaze joined his wife in the mortgage for $1,800 upon these lots is not conclusive evidence that the lots were community property. In the case of *Nicholson v. Kilbury*, 83 Wash. 196, 145 Pac. 189, we said:

"The fact that the respondent joined in the execution of certain notes and mortgages is readily explained by the well known fact that the paper of a married woman is seldom taken without requiring that her husband join therein."

That was clearly the purpose of Mr. Glaze joining in the mortgage which was made thereon by Mrs. Glaze. The money borrowed and secured by the mortgage was placed in the improvements on the property, and the reason for Mr. Glaze joining in the mortgage is clearly explained.

We fail to find anything in the record that would justify us in now finding that Mr. Glaze has any community interest in these lots or the improvements thereon. The record shows clearly that the property is the separate property of Mrs. Glaze, and, therefore, that it is not liable for a community obligation of Mr. Glaze.

We find no error in the record, and the judgment is therefore affirmed.

MORRIS, C. J., FULLERTON, CHADWICK, and ELLIS, JJ., concur.