[Nos. 15974, 16001.  Department One.  November 23, 1920.]

HIRAM F. CHAPMAN et al., Respondents, v. CHAS. D. EDWARDS, Appellant.

MINNIE CHAPMAN, Respondent, v. CHAS. D. EDWARDS, Appellant.[1]

CANCELLATION OF INSTRUMENTS (23½)—FRAUD (22)—EVIDENCE—SUFFICIENCY. In an action to cancel a mortgage for fraud, findings that the mortgage was executed without consideration and upon false representations, are sustained by evidence to the effect that the mortgagee, who had caused the arrest of a man in Canada on the charge of appropriating $5,000 of his money, represented to the mortgagors, who were relatives, that he had nothing to do with the arrest, that it was necessary to send $5,500 to Canada to secure their relative's discharge, in default of which he would be sent to the penitentiary, and that the mortgage was executed in reliance thereon, believing that the mortgagee would send the money to Canada, which was not done, though the release was secured on the mortgagee's request.

HUSBAND AND WIFE (17, 18)—SEPARATE PROPERTY OF WIFE—PROPERTY CONVEYED TO WIFE. Where community property became the separate property of the wife by virtue of deeds from her husband, pursuant to Rem. Code, § 8766, the separate nature of her estate was not changed by the fact that her husband thereafter joined with her in her execution of a mortgage thereon.

SAME (42)—ACTIONS—PARTIES. The husband is not a necessary party to an action by the wife to cancel a void mortgage upon her separate real estate.

Appeals from judgments of the superior court for Lewis county, Dykeman, J., entered January 29, 1920,

[1]Reported in 193 Pac. 712.

in favor of the plaintiffs, in actions for equitable relief, tried to the court. Affirmed.

*Forney & Ponder,* for appellant.

*Hayden, Langhorne & Metzger* and *A. R. Rutherford,* for respondents.

PARKER, J.—These are intimately related companion cases. The first was commenced by the plaintiffs Hiram F. Chapman and wife, seeking the annulling and cancellation of a real property mortgage and a $3,000 note it purported to secure the payment of, which were executed and delivered by the plaintiffs to the defendant Edwards, as claimed by the plaintiffs, without consideration and as a result of false and fraudulent representations made by the defendant to the plaintiffs. The second was commenced by the plaintiff Minnie Chapman, seeking the annulling and cancellation of a deed given as a mortgage and a $2,000 note which it purported to secure the payment of, and also a chattel mortgage and a $500 note it purported to secure the payment of; all of which were executed and delivered by the plaintiff to the defendant, as claimed by the plaintiff, without consideration and as a result of false and fraudulent representations made by the defendant to the plaintiff. The second action is, in form, a controversy over the balance of the proceeds of a sale of the mortgaged property made by consent of the parties in satisfaction of a prior mortgage, the plaintiff's right to such balance as against the defendant resting upon her right to have the mortgages and notes they purport to secure annulled and cancelled. The alleged false and fraudulent representations made by the defendant touching the execution of the mortgages and notes involved in

both actions were concededly so intimately related that all parties deemed it desirable and agreed to the trial of both actions at the same time, to avoid repetition and to the end that the record of such trial should become the record, apart from the pleadings, in each case. At the conclusion of the trial of the cases so had, the superior court rendered judgment in each case in favor of the plaintiffs as prayed for; in the first case awarding cancellation of the mortgage and note therein involved, and in the second case awarding cancellation of the mortgages and notes therein involved, and awarding to the plaintiff the balance of the proceeds of the sale of the property. From this disposition of both cases by the superior court, the defendant has appealed in each case separately to this court; bringing each before us upon the pleadings therein and with one statement of facts which is treated by all parties as being of record in both cases.

The main contention here made in appellant Edwards' behalf in both cases, to which nearly the whole of his counsel's brief and argument is directed, is that the evidence does not support nor warrant the conclusion of the trial court that the execution by respondents, the Chapmans, of the mortgages and notes in question was without consideration and induced by the false and fraudulent representations made to them by Edwards. All of the parties reside in Lewis county, the Chapmans being farmers living upon their farms near each other. It appears that C. E. Chapman, who is a brother of respondent Hiram Chapman and the husband of respondent Minnie Chapman, went to Canada with Edwards in the spring of 1918, with a view of participating in some sort of a wheat speculating scheme, the exact nature of which does not appear, though there is, reading between the lines of the

record, ample ground for inferring that the scheme was of a very questionable character in so far as its legitimacy is concerned. The thought of this venture seems to have first originated in the mind of C. E. Chapman, who apparently did not have sufficient funds for the purpose. With a view of securing such funds as he deemed necessary for the purpose, Chapman laid the scheme before Edwards, who agreed to furnish $5,000 for the purpose, with the understanding that while he, Edwards, was to furnish the money, it was to be in the form of a loan to Chapman, for which Chapman was to pay him $1,500 from the profits of the venture as his, Edwards', compensation for financing it. Thereupon, early in May, 1918, Edwards went to Canada, meeting Chapman at Vancouver. Edwards took with him $5,000 in the form of drafts which were converted into cash in Canada. They proceeded to the city of Moose Jaw, in the province of Saskatchewan, where the venture was supposed to be undertaken and consummated.

Soon after arriving at Moose Jaw, the $5,000 fell into the hands of Chapman. This Edwards claims was a result of some wrongful act on the part of Chapman, claiming at one time that Chapman actually stole it from him, and claiming at another time that Chapman obtained it from him by false pretenses. The money thereafter disappeared. The record fails to show what became of it. Thereupon Edwards went to the police magistrate of the city of Moose Jaw and swore to a criminal complaint charging Chapman with the crime of obtaining the $5,000 from him by false pretenses. Upon this complaint Chapman was arrested and placed in jail at Moose Jaw, manifestly Edwards' complaint being the sole and only cause of Chapman's arrest. The criminal case thus started against Chapman never

came to a hearing, even before the magistrate. It was dismissed at the request of Edwards some time later, resulting in Chapman's discharge and the entire abandonment of the prosecution against him.

Immediately after Chapman was arrested, Edwards started on his return journey to Lewis county, in this state, with a view of visiting Chapman's brother and wife, these respondents, and inducing them to pay to him, or give to him security for the repayment of the $5,000, claimed by him to have been wrongfully obtained by Chapman. According to Edwards' story, Chapman had agreed to a continuance of the hearing on the criminal charge in order to give him, Edwards, time to reach his, Chapman's, brother and wife in Lewis county, in this state, and try to induce them to make good to appellant the loss of the $5,000; counsel for the government representing the prosecution having consented to such continuance, and also to a dismissal of the charge upon the loss being made good by Chapman or someone for him. Upon Edwards' return to Lewis county, he took with him one Lease, an old-time friend and a man of some prominence in the county, to the homes of Hiram Chapman and Minnie Chapman, brother and wife of C. E. Chapman; and according to the testimony of witnesses, which the court, we think, was fully warranted in believing, told them in substance this story: That C. E. Chapman, the brother and husband, had been arrested and convicted of a crime at Moose Jaw, in Canada; that he was then in jail there awaiting sentence upon such conviction; that he was subject to a sentence to the penitentiary for a long term of years; that the court and counsel representing the prosecution for the government had agreed that if Chapman would cause to be deposited in court the sum of $5,500, sentence would not be ren-

dered against him upon his conviction, and that he would be discharged; that Chapman had no money and was therefore unable himself to so secure his discharge; that he, Edwards, had pleaded with the authorities at Moose Jaw not to arrest or prosecute Chapman; that sentence was being delayed by the court solely to enable him, appellant, to go to Lewis county and lay the matter before them, the brother and wife, with a view of having them either furnish the $5,500 or give security so it might be furnished by him, Edwards, to the end that he forward it to Moose Jaw to secure Chapman's discharge; that the money had to be sent to the court at Moose Jaw immediately or it would be too late to accomplish Chapman's discharge. Edwards' whole attitude in the telling of this story to the brother and wife evidenced sincere friendship on his part for Chapman. Edwards concealed from the brother and wife the fact that he himself had caused Chapman's arrest, and that his sole purpose was in fact to reimburse himself, not only to the extent of $5,000, but also to the extent of $500 additional, which he now claims was for his expenses. Lease was manifestly taken along with Edwards to visit the brother and wife because Lease, being a well-known man both in public and business affairs in the county, his presence with Edwards would have the effect of vouching for his, Edwards', veracity, Edwards being wholly unacquainted with the brother and wife, while he, Lease, was known to them by reputation, though not personally.

It is apparent from the evidence that Lease's presence and his slight participation in the conversations there taking place did have the effect of inducing the brother and wife to believe appellant's story. This story did not fail in its purpose of deeply impressing

upon these rural people, who, as the evidence shows, knew little or nothing of criminal prosecutions or other court procedure, the distressing consequence of a sentence of a member of their family to the penitentiary. The result was that the brother and wife yielded to the request of Edwards that they furnish the money or furnish him security therefor, to the end that he would immediately send it to the court at Moose Jaw and thus accomplish the release of Chapman. So, not having the money, the brother and wife executed and delivered to Edwards the mortgages and notes here in question. A few days thereafter Chapman was discharged by the magistrate at Moose Jaw, the charge against him made by Edwards being withdrawn by consent of the prosecuting officer of the government. No money was ever sent to Moose Jaw by Edwards for the purpose of accomplishing Chapman's discharge, and manifestly it was in fact never at any time necessary to do so. In fact, all that was ever necessary to accomplish Chapman's discharge was the mere expression of a desire in that behalf on the part of Edwards to the magistrate and counsel representing the prosecution on the part of the government. Indeed, it is conceded by counsel for appellant, though we are not otherwise advised on the subject, that, under the laws of Canada, a crime of this nature, being so nearly a pure personal wrong, its prosecution may be dismissed at the instance of the complaining injured party.

The facts above summarized, we think, constitute a fair summary of what the evidence proves. The only serious conflict in the evidence is as to what occurred upon the visit of appellant and Lease to the brother and wife, resulting in the execution of the notes and mortgages in question. The facts above summarized as to what occurred there we think find abundant sup-

port in the testimony of the brother and wife, and also the son of the wife, who was present during the visit of Lease and appellant. The testimony of Edwards varies from the facts above summarized, in that he claims that he did not conceal from the brother and wife the fact that he himself caused Chapman's arrest, and did not conceal the fact that the $5,500 which he was trying to have them give him or secure was for the sole purpose of reimbursing himself. His story is, in some measure, corroborated by the testimony of Lease, but not in a positive and satisfactory manner, especially as to the concealment of the fact that Edwards had himself caused the arrest of Chapman and had it within his power to cause Chapman's discharge without sending any money to Moose Jaw for that purpose. These facts, we think, show the correctness of the trial court's judgment in both cases. The story and our discussion might be much extended, but we do not feel called upon to say more touching the merits of the cases. We conclude that this brother and wife have been grievously wronged; that they executed the mortgages and notes without any consideration whatever, and that they were induced to do so by the false and fraudulent representations made to them by Edwards.

Contention is briefly made in appellant's behalf that the case of Minnie Chapman against Edwards should be dismissed for want of proper parties, and that the trial court erred in refusing to dismiss the case upon the plea and proof made in that behalf. The argument is that C. E. Chapman, the husband of Minnie Chapman, should have been made a party to the action, because of his community interest in the land in question. It appears that, on May 17, 1917, they did own this land as community property, then subject to an in-

cumbrance to secure a considerable portion of its purchase price. On that day C. E. Chapman gave to his wife, Minnie Chapman, a quitclaim deed for the land, thus making it her separate property. Section 8766, Rem. Code. He also then gave to her the personal property in question. It seems that thus making the land and personal property her separate property was done because of the fact that they had then separated as man and wife, Mrs. Chapman continuing to live upon and manage the farm, including the personal property, as her own. They have continued ever since to live separate and apart. It is true that several months thereafter Chapman did join with his wife in the execution of a mortgage upon the land, which seems to have been a renewal of the prior incumbrance securing a portion of the original purchase price. It is also true that the mortgages and notes executed by Mrs. Chapman which are in question here were by Edwards sent to Chapman at Moose Jaw, where he also executed them. It seems well settled by our decisions that the property, becoming the separate property of Mrs. Chapman by the giving of the conveyance made May 17, 1917, did not change its character as her separate property by the mere joining of her husband with her in the execution of these subsequent mortgages. *Guye v. Guye,* 63 Wash. 340, 353, 115 Pac. 731, 37 L. R. A. (N. S.) 186; *Nicholson v. Kilbury,* 83 Wash. 196, 204, 145 Pac. 189; *Glaze v. Pullman State Bank,* 91 Wash. 187, 157 Pac. 488.

Both judgments are in all things affirmed.

HOLCOMB, C. J., FULLERTON, BRIDGES, and MACKINTOSH, JJ., concur.