[No. 28351-1-I. Division One. March 15, 1993.]

*In the Matter of the Marriage of* SUSAN M. HURD, *Appellant, and* PHILIP B. HURD, *Respondent.*

*David E. Meyer* and *Brink & Todd,* for appellant.

*Nancy L. Sorensen* and *Driano & Sorensen,* for respondent.

WEBSTER, C.J. — Susan M. Hurd appeals the decree dissolving her marriage of 14 years to Philip B. Hurd. She contends that the trial court made several errors in determining the extent, value, and character of the parties' property, and that the property division should be reversed. She further contends that the court erred in determining maintenance and child support, and in failing to award her attorney fees. Mr. Hurd cross-appeals. He contends that the

community property should have been divided equally, that the child support should be calculated as if Ms. Hurd were working full time, and that he should have been granted the residential credit against his child support obligation. Based on our conclusion that the trial court erred in determining the community share of the value of Mr. Hurd's pension, and in view of numerous other problems with the trial court's findings, we reverse the decree and remand for a new trial.[1]

## FACTS

Philip B. Hurd and Susan M. Hurd met and began dating in the spring of 1975. Shortly thereafter, they began living together and were married on October 31, 1975. At the time of their marriage, Mr. Hurd was 38 years of age and had been employed as a Seattle police officer for almost 14 years. Ms. Hurd was 27 years of age and was employed as either a waitress or a janitor.

Ms. Hurd quit her job in order to maintain a home and raise the parties' children. She became pregnant approximately 6 months after the marriage and their first child, Ryan, was born on February 25, 1977. Their second son, Shaun, was born on April 30, 1980.

Several years before the parties married, Mr. Hurd purchased the vendor's rights under a real estate contract for the sale of a lot on Guemes Island and also purchased a house on Military Road. During the parties' marriage, the purchaser of the Guemes Island lot deeded the lot back to the sellers. At Mr. Hurd's request, the deed was placed in the names of both parties. Mr. Hurd testified that he chose to have the Guemes Island property placed in Ms. Hurd's name as well "for love and consideration".[2] In 1987, Mr. Hurd received $20,864.02 cash for the vendor's rights under

---

[1] The judge who tried this case has since retired. The trial on remand should be held before a presently sitting judge.

[2] Mr. Hurd may have intended to say "for love and affection", meaning that he intended to gift the property to the marital community. Alternatively, he may have been implying that the marital community furnished consideration in order to acquire the property. The record is unclear in this regard.

a real estate contract for the sale of the house on Military Road. The house was purchased and sold by Mr. Hurd, on the real estate contract, prior to his marriage to Ms. Hurd. With $10,000 of the proceeds, Mr. Hurd purchased a City of Beulah municipal bond in both parties' names.

After the parties had begun continuous cohabitation, and approximately a month before they were married, Mr. Hurd purchased a house on 7th Avenue S.W. in Seattle, which became the family residence for the next 10 years. The purchase was financed by $39,500 of Mr. Hurd's separate funds and a mortgage for $10,000. Title to the house was taken in Mr. Hurd's name only. The mortgage was paid with community income.

In 1986, the parties decided to build a model home on property they had purchased at 409th Avenue S.E. in Snoqualmie. They refinanced the house at 7th Avenue S.W., obtaining a loan for $81,385.01 in both of their names, and applied the funds toward the purchase of the model home. They later sold the house at 7th Avenue S.W. and moved into the Snoqualmie home.

During the marriage, Mr. Hurd engaged in numerous financial transactions. He testified in general terms that he put both parties' names on most of the purchases of property "for love and consideration".

Between the time of separation and dissolution, Mr. Hurd's mother passed away. Mr. Hurd estimated he would inherit approximately $50,000 to $60,000.

Mr. Hurd had become eligible to retire by the time of separation. He testified that he planned to continue working and that no mandatory retirement applied to him. Upon retirement, he is entitled to receive a monthly pension, the face value of his deferred compensation fund, and his accrued vacation pay. Shortly before dissolution, Mr. Hurd's salary increased significantly. In 1990, he began earning a gross annual salary of $49,920, whereas his gross annual salary for 1989 appears to have been $36,011.

Ms. Hurd has multiple sclerosis, although the record does not indicate to what extent she is afflicted. Since separation,

Ms. Hurd has been employed part time as a sales clerk, making approximately $5 per hour. She had not been employed outside of the home during the marriage after becoming pregnant.

A trial was held in January of 1991. The trial court entered findings of fact, conclusions of law, and a decree of dissolution on March 28, 1991. The court awarded Ms. Hurd the family home in Snoqualmie, having a net equity of $215,000, and Mr. Hurd was awarded a $65,000 equitable lien on the home. The remaining community property was divided so that Ms. Hurd received a little over half of the total community property. In addition, the trial court awarded each party his or her separate property. Ms. Hurd's separate property consisted of a life insurance policy on her life with a cash surrender value of $600. The trial court found that the Guemes Island property and the $10,000 municipal bond purchased with the proceeds from the Military Road real estate contract were Mr. Hurd's separate property, and awarded him those properties, along with $40,000 in bearer bonds and his pension and employment benefits acquired before the marriage. Furthermore, the trial court required Mr. Hurd to pay Ms. Hurd $500 per month and the cost of her medical insurance, as maintenance, for 3 years. Finding that Ms. Hurd's net income was $774.50 per month at the time of dissolution, while Mr. Hurd's net monthly income equaled $3,441.15, the trial court required Mr. Hurd to pay $600 per month for child support. The trial court denied Ms. Hurd's request for an award of attorney fees.

PROPERTY DIVISION

Ms. Hurd asserts that the trial court erred in valuing Mr. Hurd's pension. Mr. Hurd's pension is governed by the Law Enforcement Officers' and Fire Fighters' Retirement System (LEOFF) plan I, a state plan for law enforcement officers and firefighters. Mr. Hurd had become eligible to retire by the date of the parties' separation. As he continues to work, the community share of the present value of his pension decreases.[3] After the parties separated, Mr. Hurd's salary

---

[3]LEOFF plan I is a defined benefit plan. The present value of such a plan is calculated based on several assumptions, including the projected date of retire-

increased significantly. The record does not reflect whether the increase was the result of a promotion. Jay Howe, an actuary called by Mr. Hurd, testified that the present value of the community share of Mr. Hurd's pension, based on his 1989 income, was $156,178, assuming retirement at age 54, and $79,634, assuming retirement at age 60. Based on Mr. Hurd's income figure for 1990, Howe testified that the present value of the community portion of the plan was $210,101, assuming retirement at age 54, and $107,129, assuming retirement at age 60. The trial court found that the present value of the community share of the value of Mr. Hurd's pension was $79,634.

▇ Before making a property division, the trial court must determine the nature and extent of the parties' community and separate property. RCW 26.09.080; *In re Marriage of DeHollander*, 53 Wn. App. 695, 700, 770 P.2d 638 (1989). Earnings arising from services performed during marriage are community property. *In re Marriage of Landry*, 103 Wn.2d 807, 810, 699 P.2d 214 (1985). Deferred earnings not subject to forfeiture are "vested". Washington State Bar Ass'n, *Community Property Deskbook* § 3.24, at 3-24 (2d ed. 1989). If the deferred earnings may be received immediately, they are "matured". *In re Marriage of Skaden*, 19 Cal. 3d 679, 685, 566 P.2d 249, 139 Cal. Rptr. 615, 617-18 (1977), *cited in Community Property Deskbook* § 3.24, at 3-25. Vested or matured benefits are property which must be allocated in a dissolution action. *Community Property Deskbook* § 3.24, at 3-24 (citing *Edwards v. Edwards*, 74 Wn.2d 286, 444 P.2d 703 (1968); *In re Marriage of Clark*, 13 Wn. App. 805, 538 P.2d 145, *review denied*, 86 Wn.2d 1001 (1975)).

▇▇ Because Mr. Hurd may retire at any time and has an unconditional right to immediate payment of his pension upon his retirement, his pension is both a vested and a matured benefit. *See Skaden*, 19 Cal. 3d at 685. Therefore,

---

ment and the member's statistical life expectancy. A member who retires at the first eligibility date may receive a smaller monthly benefit than if he chooses to retire later, but for a longer period of time, based upon a longer projected life expectancy. Thus, the present value of such a plan will be greater if it is calculated as of the earlier date of retirement eligibility.

the present value of Mr. Hurd's monthly pension should be determined assuming Mr. Hurd's retirement as of the date of dissolution, rather than at some future date. Furthermore, Washington courts abide by the general principle that increases in retirement benefits occurring after separation should not be treated as separate property if the increase was enhanced by community efforts over many years. *In re Marriage of Bulicek*, 59 Wn. App. 630, 638, 800 P.2d 394 (1990). Although a spouse's earnings following separation are generally characterized as separate property, Mr. Hurd's salary increase, received shortly after separation, should be presumed to be the result of community efforts absent substantial evidence to the contrary.[4] We find no such contrary evidence here.

██ We hold that the trial court erred in failing to consider Mr. Hurd's higher salary figure in calculating the community share of the present value of his monthly pension. We also hold that Mr. Hurd's pension should have been calculated assuming immediate retirement. We therefore reverse the property division and remand for a new trial. On remand, the income figure used to calculate Mr. Hurd's monthly pension benefit shall be that for his position at the time of dissolution if the position was held for a minimum of 12 months preceding the date of dissolution, pursuant to RCW 41.26.030-(12)(a)(i); or if Mr. Hurd did not hold the same position for 12 months from the date of dissolution, then the income figure shall be the 24-month average of his monthly salary from the date of dissolution backward in time, pursuant to RCW 41.26.030(12)(a)(ii). Although Ms. Hurd did not introduce any evidence showing the present value of his retirement assuming an immediate retirement date, the trial court, rather than an actuary, is responsible for determining as a matter of law the correct salary and valuation dates to be used in calculating the community share of a pension's present value.

---

[4] Even if Mr. Hurd received a promotion following separation, the promotion may be largely the result of community efforts. To the extent that this may be so, the pension should be valued based on the increased salary.

Ms. Hurd next contends that the trial court erred in failing to recognize Mr. Hurd's accumulated vacation of approximately 433 hours as an asset. Mr. Hurd testified that he was eligible to retire at any time, and, upon retirement, could elect to cash out his vacation pay for approximately $10,392.

As previously stated, prior to making a property division, the trial court must determine the nature and extent of the parties' community and separate property (RCW 26.09-.080; *DeHollander*, at 700), and earnings arising from services performed during marriage are community property. *Landry*, 103 Wn.2d at 810. Vacation pay comprises a type of deferred earning. *See Landry*, at 810; 1 Washington State Bar Ass'n, *Family Law Deskbook* § 38.3(4), at 38-8 (1989). Since the accrued vacation pay is not subject to forfeiture, it is "vested". *Community Property Deskbook* § 3.24, at 3-22. Moreover, since Mr. Hurd may retire at any time, and upon retirement is entitled to an immediate payment of his vacation pay, the accrued vacation pay comprises a "matured" benefit. *See Skaden*, 19 Cal. 3d at 685. Vested or matured benefits must be allocated in a dissolution action. *Community Property Deskbook* § 3.24, at 3-24 (citing *Edwards v. Edwards, supra*; *In re Marriage of Clark, supra*).

Here, Ms. Hurd's counsel did not enter an objection on the record to the trial court's failure to consider and dispose of the vacation pay. Therefore, the error claimed was not preserved for appellate review. RAP 2.5(a). Nevertheless, because we are remanding for a new trial, we instruct the trial court on remand to determine the amount of vacation pay as of the date of dissolution, and to determine whether the entire amount of the vacation pay should be characterized as community property. The trial court may subtract from the value of vacation pay any required income tax and Social Security deductions, but only if Mr. Hurd provides sufficient evidence of the amount of any such taxes and that such will become payable in the immediate future.

Ms. Hurd further contends that the trial court erred in reducing the value of Mr. Hurd's deferred compensation plan from a face value of $42,080 to a present value of $21,000.

Mr. Hurd testified that he is eligible to retire at any time, and is entitled to receive the face value of his deferred compensation plan upon retiring.[5] He also admits that the total amount of the deferred compensation plan is community property. The trial court arbitrarily reduced the face value of the deferred compensation plan by one-half, apparently based on the assumption that Mr. Hurd would not retire until age 60 and to account for tax and Social Security deductions.

Like the accrued vacation pay, Mr. Hurd's deferred compensation plan is "vested" because it is not subject to forfeiture. *Community Property Deskbook* § 3.24, at 3-22. The deferred compensation plan also falls into the category of a "matured" benefit because Mr. Hurd may retire at any time, and upon retirement is entitled to an immediate payment of his deferred compensation. *See Skaden,* 19 Cal. 3d at 685. As previously stated, vested or matured benefits must be allocated in the dissolution. *Community Property Deskbook* § 3.24, at 3-24. Since Mr. Hurd's deferred compensation plan has both vested and matured, its value should be determined as of the date of dissolution, and not by assuming retirement at some later date. Furthermore, since the deferred compensation may be disbursed in a lump sum, as opposed to monthly payments, there was no purpose in reducing the value of the deferred compensation plan to present value. We also point out that the trial court erred in reducing the deferred compensation by some arbitrary amount for income taxes. A reduction for income taxes would only be appropriate based on substantial evidence as to the amount of such taxes and that the taxes would become payable in the immediate future. Although Ms. Hurd's counsel objected to the trial court's calculations, her counsel did not object to the trial court assuming retirement at age 60. Nevertheless, since we are remanding for a new trial, and since Mr. Hurd admits that the entire value of the deferred compensation

---

[5]The deferred compensation plan is a defined contribution plan. Such plans are valued by calculating the fair market value of the assets held in the plan.

(as of the time of trial) is community property, the trial court on remand shall value it in accord with the market value of the community assets in the plan at the time of the new trial.[6]

Ms. Hurd next asserts that Mr. Hurd's anticipated inheritance from his mother's estate should have been taken into consideration in dividing the parties' property. Mr. Hurd testified that his mother passed away approximately 5 months before the trial, that the approximate value of her estate was $150,000 to $180,000, and that as a one-third beneficiary he would receive around $50,000 or $60,000. Ms. Hurd concedes that the inheritance is Mr. Hurd's separate property, but believes the inheritance should have been specifically recognized and awarded by the court because it impacted the economic circumstances of the parties at the time of dissolution. We agree.

A bequest in a will while the testator is still living is merely an expectancy. *See Rubin v. Rubin*, 204 Conn. 224, 229-30, 527 A.2d 1184, 1187, 62 A.L.R.4th 91 (1987); *Gassaway v. Gassaway*, 489 A.2d 1073, 1076 n.9 (D.C. 1985) (both cited in *Family Law Deskbook* § 38.5, at 38-19). However, when the testator has passed away and the will can no longer be changed, the bequest becomes a vested interest to the extent of its actual value. Although the bequest was Mr. Hurd's separate property, it must be considered nonetheless in making a property division. RCW 26.09.080(2). Ms. Hurd's counsel failed to preserve for appellate review any objection to the trial court's failure to consider the inheritance in dividing the property. *See* RAP 2.5(a). As we are remanding for a new trial, however, we instruct the trial court on remand to consider the inheritance.

Having discussed Ms. Hurd's assignments of error regarding recognition and valuation of certain properties, we now discuss whether the trial court erred in characterizing

---

[6]The marital community is entitled to the benefit of any interest earned or appreciation in the value of the community assets in the plan since the time of the first trial.

certain properties. Absent some change in the character of property after it is acquired, the character of the property as either community or separate is determined at the date of its acquisition. *In re Marriage of Shannon*, 55 Wn. App. 137, 140, 777 P.2d 8 (1989). Property retains its character as either separate or community, unless its character is changed. *In re Estate of Madsen*, 48 Wn.2d 675, 677, 296 P.2d 518 (1956). A spouse's separate property is that owned before marriage, or acquired during marriage by gift, bequest, devise, or inheritance, together with the "rents, issues and profits thereof". RCW 26.16.010, .020; *see Enrich v. Barton*, 2 Wn. App. 954, 959, 471 P.2d 700 (1970). However, property acquired by purchase during marriage is presumed to be community property. *Estate of Madsen v. Commissioner*, 97 Wn.2d 792, 796, 650 P.2d 196 (1982). The party asserting that an asset purchased during marriage is separate property can overcome this presumption only with clear and convincing proof. *Madsen*, 97 Wn.2d at 796. To effectively rebut the presumption that property acquired during marriage is community property, a party asserting that an item of property acquired during marriage is separate property must be able to trace "with some degree of particularity" the separate source of the funds used for the acquisition. *Pollock v. Pollock*, 7 Wn. App. 394, 400, 499 P.2d 231 (1972) (quoting *Berol v. Berol*, 37 Wn.2d 380, 382, 223 P.2d 1055 (1950)). Evidence that a spouse had adequate separate funds available to purchase property is insufficient to overcome the presumption that an asset acquired during marriage is community property, unless separate assets are the only assets available. *In re Marriage of Janovich*, 30 Wn. App. 169, 171, 632 P.2d 889 (quoting *Berol*, at 382), *review denied*, 95 Wn.2d 1028 (1981); *Fite v. Fite*, 3 Wn. App. 726, 732, 479 P.2d 560 (1970), *review denied*, 78 Wn.2d 997 (1971). When "separate funds are commingled with community funds so that they cannot be traced or identified, the commingled funds, or assets acquired therefrom, become community property." *Mumm v. Mumm*, 63 Wn.2d 349, 352, 387 P.2d 547 (1963).

██ ██ Spouses may by contractual agreement change their separate property into community property or their community property into separate property. *Volz v. Zang*, 113 Wash. 378, 381-84, 194 P. 409 (1920); *Bosone v. Bosone*, 53 Wn. App. 614, 618, 768 P.2d 1022 (1989). However, to recognize any such agreement, our courts have required some evidence in writing of the mutual intention of the parties to change the character of the property. *Shannon*, at 140; *see also In re Estate of Verbeek*, 2 Wn. App. 144, 158, 467 P.2d 178 (1970); *cf. State ex rel. Van Moss v. Sailors*, 180 Wash. 269, 275, 39 P.2d 397 (1934) (positive and direct evidence of an agreement is required). The name under which the property is held does not determine whether the property is community or separate. *Merritt v. Newkirk*, 155 Wash. 517, 520-22, 285 P. 442 (1930). However, a spouse's use of his or her separate funds to purchase property in the name of the other spouse, absent any other explanation, permits a presumption that the transaction was intended as a gift. *See Scott v. Currie*, 7 Wn.2d 301, 308-09, 109 P.2d 526 (1941). Our courts have also held that a gift of property to both spouses by a third party is presumed to be a gift to the marital community, absent clear and convincing evidence of a contrary intent by the donor. *In re Marriage of Martin*, 32 Wn. App. 92, 96, 645 P.2d 1148 (1982). We now hold that a spouse's use of his or her separate funds to purchase property in the names of both spouses, absent any other explanation, permits a presumption that the purchase or transaction was intended as a gift to the community. We also hold that there must be clear and convincing proof to overcome such a presumption. *Cf. Madsen*; *Pollock*; *Berol*.

Ms. Hurd asserts that the trial court erred in finding that the Guemes Island property was separate as opposed to community property. She asserts that Mr. Hurd's vendor's rights under a real estate contract governing the sale of a lot on Guemes Island were converted from separate property into community property when the purchaser could no longer keep up with the payments, and, at Mr. Hurd's direction,

conveyed the property to both Mr. and Ms. Hurd as husband and wife.

Mr. Hurd testified in general terms that he often put property in both of the parties' names for "love and consideration". Since there is no evidence of a writing which indicates the mutual intent of the parties to convert the property from a separate to a community asset, the property could not have been converted from separate to community on the basis of an agreement. However, as noted above, Mr. Hurd's act of requesting that the deed be conveyed back in the names of both parties permits a presumption that he intended to make a gift to the community. In view of Mr. Hurd's testimony that he often placed property in both parties' names for "love and consideration", upon remand the court needs to determine what Mr. Hurd meant by that phrase. See footnote 2.[7] The trial court did not enter any finding as to whether Mr. Hurd intended reconveyance as a gift to the community.

Ms. Hurd next asserts that the trial court erred in finding that the $10,000 City of Beulah municipal bond was separate as opposed to community property. She contends that Mr. Hurd converted a portion of his vendor's interest in the property on Military Road from separate to community property when he cashed out the contract for $20,864.02 and purchased a $10,000 municipal bond in the names of both parties as joint tenants. As already mentioned, Mr. Hurd testified during trial that he frequently put property in the names of both parties for "love and consideration".[8] As with the Guemes Island property, the trial court on remand is instructed to make appropriate findings on whether Mr.

---

[7]Although Ms. Hurd makes a general and unsubstantiated assertion of commingling with respect to this property, she has failed to demonstrate that the acquisition of the property was accomplished by anything but Mr. Hurd's exercise of his rights under the vendor's contract.

[8]Mr. Hurd stated during his deposition that he made a conscious choice to put the bonds in both parties' names for the same reason he placed the Guemes Island property in both parties' names. This statement, however, was not made part of the record during trial.

Hurd intended the $10,000 City of Beulah bond to be a gift to the community.

Ms. Hurd further asserts that the source of the funds used to purchase the $10,000 City of Beulah bond could have been community. Mr. Hurd received $20,864.02 on August 19, 1987, made a payment of $5,512 toward the acquisition of the Snoqualmie house, and deposited $16,100 in the parties' City Credit Union account on October 9, 1987. Mr. Hurd contends that the fact that only $16,100 of the payoff was deposited into the joint account and then used to purchase the bond does not make the tracing impossible, since the money deposited could only have come from the separate property payoff. Ms. Hurd does not deny that the money deposited could only have come from the contract payoff. We conclude that the $10,000 municipal bond could be traced to the sale of the Military Road property. However, as indicated above, Mr. Hurd's donative intent must be ascertained. Absent clear and convincing evidence to the contrary, donative intent may be presumed based on the purchase of the bond in the names of both parties.

Ms. Hurd next contends that the trial court erred in finding that a portion from the proceeds of the house at 7th Avenue S.W. was Mr. Hurd's separate property. *In re Marriage of Lindsey*, 101 Wn.2d 299, 304, 678 P.2d 328 (1984) holds that the court should make a just and equitable disposition of property accumulated by virtue of joint effort during a meretricious relationship. In so holding, the court overruled *Creasman v. Boyle*, 31 Wn.2d 345, 196 P.2d 835 (1948), which had declared the presumption that

> in the absence of any evidence to the contrary, it should be presumed *as a matter of law* that the parties intended to dispose of the property exactly as they did dispose of it.

*Creasman*, at 356.

Here, $39,500 used to purchase the house at 7th Avenue S.W. can clearly be traced to Mr. Hurd's separate property. Even if the parties had been married when he purchased the house, the portion of the funds used to purchase the house attributable to Mr. Hurd's separate property

would have remained his separate property, absent some change in its character. The mere fact that the parties may have been cohabiting when Mr. Hurd purchased the house does not transform separate property into community property.[9] The trial court did not err in concluding that the percentage of the house's appreciated value attributable to Mr. Hurd's separate contribution remained his separate property.

 Ms. Hurd further asserts that even if the proceeds from the West Seattle property retained joint characteristics of separate and community property, the separate proceeds were converted to community property when the parties built a marital residence on property they purchased in Snoqualmie.[10] Money borrowed by either spouse during marriage is presumed to be community in nature, regardless of the character of the property pledged as security. *Finley v. Finley*, 47 Wn.2d 307, 312-13, 287 P.2d 475 (1955). That is so because the loan is "presumptively for the benefit of the marital community, and presumptively is a community obligation." *National Bank of Commerce v. Green*, 1 Wn. App. 713, 717, 463 P.2d 187 (1969). These presumptions, however, have no bearing on the character of property pledged as security, which retains its character as either separate or community property. *Glaze v. Pullman State Bank*, 91 Wash. 187, 191, 157 P. 488 (1916). The test for determining whether a debt obligation is separate or community in nature is the

---

[9]*In re Marriage of Hilt*, 41 Wn. App. 434, 704 P.2d 672 (1985), relied upon by Ms. Hurd, is distinguishable. In that case, the parties lived together for 4 years before they married, during which time they shared in the management of household affairs and made no attempt to keep their assets or income separate and apart. Six months before their marriage, they purchased a house as tenants in common. The property acquired by the parties before they were married could not be traced to either party's separate funds. *Hilt*, at 436. Nor could the amount contributed by each party be ascertained. *Hilt*, at 437. Based on these facts, the trial court properly treated all of the property acquired before the marriage as community property.

[10]Ms. Hurd bases this assertion on the fact that the proceeds were drawn from the parties' jointly held City Credit Union account. Since we decide this issue on another basis, we decline to discuss whether the proceeds were commingled.

purpose for which the note was executed. *National Bank of Commerce*, at 717. If the money is borrowed for a community purpose, then the debt is community. On the other hand, if the money is borrowed for a separate purpose, then the debt is separate. *National Bank of Commerce*, at 717-18.

Here, the mortgage of $81,385.01 on the property located at 7th Avenue S.W. was taken for the purpose of building a model home in Snoqualmie. The mortgage proceeds were, therefore, community property. The trial court erred in characterizing the proceeds from the mortgage as Mr. Hurd's separate property. We are unable to discern from the record to what extent the trial court based its award to Mr. Hurd of a $65,000 equitable lien on the Snoqualmie house on its finding that proceeds from the mortgage were Mr. Hurd's separate property. Therefore, the trial court shall reconsider Mr. Hurd's equitable lien. The trial court further erred in finding that the entire proceeds from the sale of the house at 7th Avenue S.W. were Mr. Hurd's separate property. The house itself, which was pledged as security, retained its character as part separate and part community. Therefore, only 79.8 percent of the net proceeds from the sale of the house on 7th Avenue S.W. may be attributed to Mr. Hurd's separate property, so long as the proceeds can be traced and identified. At the new trial, the trial court shall specifically recognize the $25,000 remaining balance on the Snoqualmie house mortgage as a community debt, and establish the character of the mortgage proceeds and proceeds from the sale of the house consistent with this opinion.

When the trial court has incorrectly characterized the parties' property, remand is required only if

(1) the trial court's reasoning indicates that its division was significantly influenced by its characterization of the property, and (2) it is not clear that had the court properly characterized the property, it would have divided it in the same way.

*Shannon*, 55 Wn. App. at 142. Here, the trial court's failure to consider certain properties, its improper valuation of Mr. Hurd's pension and deferred compensation plan, incorrect characterization of the mortgage proceeds, and failure to

make findings essential to a proper determination of the character of certain properties compel a remand of this case for a new trial. At the new trial, the court shall divide the property equitably according to RCW 26.09.080, which states:

> [T]he court shall . . . make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors including, but not limited to:
> (1) The nature and extent of the community property;
> (2) The nature and extent of the separate property;
> (3) The duration of the marriage; and
> (4) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse with whom the children reside the majority of the time.

The trial court has the duty to make final disposition of all of the property of the parties that is brought before the court. *DeRevere v. DeRevere*, 5 Wn. App. 741, 743, 743 P.2d 491 (1971).[11]

The property judgment is reversed and remanded for a new trial.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

BAKER and KENNEDY, JJ., concur.

Reconsideration denied April 19, 1993.

Review denied at 122 Wn.2d 1020 (1993).

---

[11] Mr. Hurd asserts that the trial court should have "more equitably" divided the community property. In equitably dividing the property, the court may in its discretion award a greater percentage of the community property to one of the parties. The record reflects that Ms. Hurd currently has limited earning capacity and multiple sclerosis. In view of Mr. Hurd's significantly greater earning power and separate property, the length of the marriage, and Ms. Hurd's economic circumstances, awarding Ms. Hurd a greater percentage of the community property would be equitable under the circumstances and is within the discretion of the trial court.