Richard J. FORRESTER,[1] Respondent Below, Appellant,

v.

Margaret R. FORRESTER, Petitioner Below, Appellee.

No. 32, 2007.

Supreme Court of Delaware.

Submitted: May 7, 2008.
Decided: July 10, 2008.

1. Pursuant to Supreme Court Rule 7(d), the parties were assigned pseudonyms by order of this Court dated January 29, 2007.

Shawn Dougherty, Esquire, of Weik, Nitsche, Dougherty & Componovo, Wilmington, Delaware; for Appellant.

H. Alfred Tarrant, Jr. (argued) and Thomas Shellenberger, Esquires, of Cooch and Taylor, Wilmington, Delaware; for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices, constituting the Court en Banc.

JACOBS, Justice.

Richard J. Forrester ("Husband") appeals from an order of the Family Court requiring him to divide his City of Wilmington Police pension and his accumulated compensatory time with his former wife, Margaret R. Forrester ("Wife"). Husband argues that neither his pension nor his compensatory time were marital assets subject to property division and that, therefore, the Family Court erred as a matter of law and abused its discretion in ordering their division. We hold that Husband's City of Wilmington Police pension, even though a "substitute" for Social Security benefits, is a marital asset subject to equitable division by the Family Court in divorce proceedings. We also hold that the Family Court did not err in awarding Wife a portion of Husband's accumulated compensatory time. Therefore, we affirm.

### FACTS

Husband and Wife were married on September 22, 1989 and were divorced on February 10, 2006. Two children were born of the marriage. During their marriage, Wife was primarily responsible for the care of the children, while Husband was employed as a police officer by the City of Wilmington Police Department ("WPD").

Husband began his employment as a police officer in 1984, and is still employed by the WPD. At all relevant times, Husband made contributions to the City of Wilmington Police Pension Plan, but he could not, and therefore did not, make any contributions to Social Security in his capacity as a WPD employee.[2]

During the first year and a half of the marriage, Wife was employed full-time. In 1991, Wife stopped working for three months to take care of their first child; afterwards, she resumed employment on a part-time basis. In 1998, Wife began working again full-time. Wife has a Roth IRA, two 403(b) Plans with the State of Delaware and Christiana Care, and a State of Delaware Defined Benefit Pension Plan. She is also eligible to receive Social Security benefits.

By the date of the parties' separation, Husband had accrued 457 hours of accumulated compensatory time. Husband could either "cash in" those hours and receive his current hourly wage, or use them as vacation or early retirement time. The cash value of the 457 hours of compensatory time is approximately $14,000. Shortly after the parties separated, Husband cashed in approximately 160 hours for $5,000.

Husband's WPD pension and his compensatory time were disputed assets in the divorce proceedings. Husband argued that the WPD pension was exempt from the marital estate and equitable division because it was received "in lieu of" Social Security benefits, which under federal law are not subject to property division. Wife responded that pensions "in lieu of" Social Security benefits are fundamentally different from actual Social Security benefits, and that therefore such pensions, like other retirement benefits earned during a marriage, are marital property subject to equitable division.

The Family Court recognized that there were conflicting Family Court decisions concerning whether pensions that operate "in lieu of" Social Security can be divided.[3] After discussing those conflicting cases, the trial court concluded that "no federal or state restriction prohibit[ed] Husband's police pension from being considered part of the marital estate and equitably divided, even though the WPD pension is received in lieu of non-divisible social security benefits."[4] The Family Court noted, however, that it was required to "consider the inequities involved and avoid any imbalance that may result given that Husband is not entitled to a portion of Wife's accrued social security benefits."[5] After comparing the respective economic positions of the

---

**2.** Both before and during his initial years with the WPD, Husband worked at other jobs as a result of which he did make contributions to Social Security. The exact amount of those contributions, as well as the amount of Social Security benefits to which Husband would be entitled, are unknown. In any case, under the Windfall Provision of the Social Security Act, any Social Security benefits that Husband will receive will be reduced as a result of Husband receiving the WPD pension. *See* 42 U.S.C. § 415.

**3.** Specifically, the Family Court compared two unreported and unpublished decisions, *Bledsoe v. Bledsoe*, No.1947–81 (Del.Fam.Ct.

1982) and *Peiffer v. Peiffer*, No. CN98–10082 (Del.Fam.Ct.1999). In *Bledsoe*, the Family Court found, by interpreting the legislation creating the pension, that husband's City of Wilmington police pension was a marital asset subject to equitable distribution. *See Bledsoe* at 9–10. The Family Court came to the opposite conclusion in *Peiffer*, based solely on the fact that husband's City of Seaford police pension was "in lieu of" Social Security. *See Peiffer* at 4.

**4.** *Forrester v. Forrester*, No. CN06–01118, at 10 (Del.Fam.Ct.2006).

**5.** *Id.*

parties, their employment history, annual income, and assets, the trial judge divided Husband's WPD pension, giving Wife a 50% share in that portion of the pension that Husband earned during the marriage.[6]

As for the disputed accumulated compensatory time, Wife sought to be awarded a portion of the monetary value of that time on an "if, as, and when basis." The Family Court held that Husband's compensatory time accumulated during the marriage was marital property subject to division, similar to other types of deferred compensation. Additionally, the trial judge noted that "Wife's request that she receive her portion of the money on an if, as, and when basis is unnecessary given that there are no conditions precedent to Husband receiving a payout," i.e., because Husband could "cash in" the compensatory time whenever he chose. The trial court concluded that Wife was entitled to "half of the 457 hours accumulated during the marriage for a total of 228.5 hours at Husband's hourly rate of $32.00" and addressed Husband to "either: (1) request an immediate payout of these hours and turn that amount over to Wife; or (2) submit proof of an accurate accounting of those hours to Wife and deduct that amount from his portion of the marital estate."[7]

This appeal followed.

## ANALYSIS

### Standard of Review

 On appeal from a Family Court decision dividing marital property, we review the facts and the law, as well as the inferences and deductions made by the trial judge.[8] Conclusions of law are reviewed *de novo*.[9] If the law was correctly applied, we review for an abuse of discretion.[10] We will not disturb findings of fact unless they are clearly wrong and the doing of justice requires their overturn.[11]

### I. Husband's City of Wilmington Police Department Pension

Husband first claims that his WPD pension is not a marital asset and, thus, is not subject to equitable division. Specifically, Husband argues that, because his WPD pension is "in lieu of" Social Security, it should receive the same treatment as Social Security benefits, and, thus, is exempt from equitable division.

### Social Security Benefits Are Not Subject to Division

 Under 42 U.S.C. § 407, Social Security benefits are not "transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under [the Social Security Act] shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."[12] Although 42 U.S.C. § 659 permits garnishment for enforcement of alimony

---

6. *Id.* at 10–11. The Family Court divided Wife's State of Delaware Defined Benefit Pension Plan in the same manner. *Id.* at 14.

7. *Id.* at 12.

8. *Wife J.F.V. v. Husband O.W.V., Jr.*, 402 A.2d 1202, 1204 (Del.1979).

9. *Mundy v. Devon*, 906 A.2d 750, 752 (Del. 2006) (citing *In re Heller*, 669 A.2d 25, 29 (Del.1995)).

10. *W. v. W.*, 339 A.2d 726, 727 (Del.1975). The Family Court has "broad discretion" in the division of marital property, in general, and in disposing of pension plan benefits, in particular. *See Linder v. Linder*, 496 A.2d 1028, 1030 (Del.1985); *Robert C.S. v. Barbara J.S.*, 434 A.2d 383, 387 (Del.1981).

11. *Montgomery Cellular Holding Co., Inc. v. Dobler*, 880 A.2d 206, 219 (Del.2005).

12. 42 U.S.C. § 407(a).

and child support obligations, it categorically excludes "any payment or transfer of property or its value by an individual to his spouse or former spouse in compliance with any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses."[13] As the United States Supreme Court held in *Flemming v. Nestor*,[14] "[t]o engraft upon the Social Security system a concept of 'accrued property rights' would deprive it of the flexibility and boldness in adjustment to everchanging conditions which it demands."[15] Therefore, under federal law, Social Security benefits are not marital assets and cannot be divided upon the dissolution of the Social Security beneficiary's marriage.

Based on Section 407 and *Flemming v. Nestor*, the relevant state decisions hold almost uniformly that federal law prevents division of these benefits.[16] In Delaware, several Family Court decisions have held that Social Security benefits are not subject to division.[17] We agree.

*Pensions Received as a "Substitute" For Social Security Are Subject to Division*

Husband argues that because Social Security benefits are not subject to equitable division, his WPD pension—which he receives "in lieu of" Social Security benefits—is exempt from the marital estate and from equitable division. Wife agrees that Husband's pension is received "in lieu of" Social Security benefits, but contends that pensions "in lieu of" Social Security are fundamentally different from actual Social Security benefits and, like other retirement benefits earned during the marriage, are marital property that is subject to equitable division.

Despite the absence of any legal authority, the parties agreed, as did the Family

13. 42 U.S.C. § 659(i)(3)(B)(ii).

14. 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960).

15. *Flemming v. Nestor*, 363 U.S. 603, 610, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960).

16. BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 6.06 at 317 (2d ed. 1994). *See, e.g., Cox v. Cox*, 882 P.2d 909, 920 (Alaska 1994); *Kelly v. Kelly*, 198 Ariz. 307, 9 P.3d 1046, 1047 (2000); *Gentry v. Gentry*, 327 Ark. 266, 938 S.W.2d 231, 232–33 (1997); *In re Marriage of Cohen*, 105 Cal.App.3d 836, 164 Cal.Rptr. 672, 676 (1980); *In re Marriage of James*, 950 P.2d 624, 629 (Colo.Ct.App.1997), *cert. denied* (Colo.1998); *Severs v. Severs*, 837 N.E.2d 498, 501 (Ind.2005); *In re Marriage of Crook*, 211 Ill.2d 437, 286 Ill.Dec. 141, 813 N.E.2d 198, 206 (2004); *In re Marriage of Boyer*, 538 N.W.2d 293, 295 (Iowa 1995); *Mahoney v. Mahoney*, 425 Mass. 441, 681 N.E.2d 852, 856 (1997); *Depot v. Depot*, 893 A.2d 995, 998 (Me.2006); *Webster v. Webster*, 271 Neb. 788, 716 N.W.2d 47, 54–56 (2006); *Hayden v. Hayden*, 284 N.J.Super. 418, 665 A.2d 772, 775 (App.Div.1995); *Wolff v. Wolff*, 112 Nev. 1355, 929 P.2d 916, 920–21 (1996); *Cruise v. Cruise*, 92 N.C.App. 586, 374 S.E.2d 882, 884 (1989); *Olson v. Olson*, 445 N.W.2d 1, 11 (N.D.1989); *Neville v. Neville*, 99 Ohio St.3d 275, 791 N.E.2d 434, 436 (2003); *Umber v. Umber*, 591 P.2d 299, 301–02 (Okla. 1979); *In re Marriage of Swan*, 301 Or. 167, 720 P.2d 747, 751 (1986); *Powell v. Powell*, 395 Pa.Super. 345, 577 A.2d 576, 580 (1990); *Kirk v. Kirk*, 577 A.2d 976, 980 (R.I.1990); *Simmons v. Simmons*, 370 S.C. 109, 634 S.E.2d 1, 4 (App.2006), *cert. denied* (S.C. 2007); *Johnson v. Johnson*, 734 N.W.2d 801, 808–09 (S.D.2007); *Richard v. Richard*, 659 S.W.2d 746, 749 (Tex.Ct.App.1983); *Olsen v. Olsen*, 169 P.3d 765, 768 (Utah Ct.App.2007); *In re Marriage of Zahm*, 138 Wash.2d 213, 978 P.2d 498, 501 (1999).

17. *See, e.g., R.K. v. B.K.*, 2005 WL 3514306, at *3 (Del.Fam.Ct.) ("Wife is forbidden by federal law from sharing Husband's social security benefits."); *Turner v. Turner*, 1998 WL 1541298, at *2 (Del.Fam.Ct.) ("Both parties agree that social security income is not subject to division as marital property."); *Short v. Armbruster*, 1994 WL 840621, at *3 (Del. Fam.Ct.) ("Under the Social Security Act, social security benefits may be reached by a former spouse for alimony or child support, but not for property division.").

Court, that Husband's WPD pension is "in lieu of" or "the functional equivalent of" Social Security benefits.[18] That characterization is based on the fact that, as a WPD police officer, Husband could not, and therefore did not, make any contributions to the Social Security system.[19] It is only in that sense that we refer to Husband's WPD pension plan as a "substitute" for Social Security benefits in this Opinion.

■ Husband's contention raises an issue of first impression in this Court. Other state courts that have decided that issue are divided. Nine jurisdictions have determined that retirement plans that substitute for federal Social Security are subject to division as a marital asset.[20] Four jurisdictions do not treat such plans as marital assets.[21] We conclude that pensions, owned by a party to a marriage, that

18. The legislation governing the various WPD pension plans is silent regarding the interplay between those pensions and the Social Security system. To demonstrate that his WPD pension was "in lieu of" or the "functional equivalent of" Social Security benefits, Husband attempted to offer evidence relative to the Social Security benefits that he would have received upon retirement, had he contributed to Social Security instead of his WPD pension plan. The proffered evidence consisted of certain hypothetical calculations performed by using a program publicly available on the Social Security website. Wife objected, and the Family Court rejected Husband's argument as "speculative."

19. It is undisputed that police officers employed by the WPD do not participate in the Social Security system. *See* 42 U.S.C. §§ 410 and 418. *See also* 29 *Del. C.* § 5701 *et seq.* and Wilmington City Code § 2–152.

20. *See Mann v. Mann,* 778 P.2d 590 (Alaska 1989) (finding that a state plan that operated as a substitute for Social Security is subject to equitable division upon divorce); *Gray v. Gray,* 352 Ark. 443, 101 S.W.3d 816 (2003) (finding that a federal pension plan opted into in lieu of Social Security is not exempt from division because Congress could have exempted those plans, as it did for Social Security, but did not); *Skelton v. Skelton,* 339 Ark. 227, 5 S.W.3d 2 (1999) (finding that a mandatory state firemen's pension plan in lieu of Social Security is not exempt from division, because the purposes of the pension plan and of the Social Security system are fundamentally different); *McGran v. McGran,* 1995 WL 907577 (Conn.Super.) (permitting division of a state pension plan that functioned as a replacement for Social Security); *Johnson v. Johnson,* 726 So.2d 393 (Fla.Dist.Ct.App.1999) (finding that the state's substitute pension plan did not function as Social Security and thus was sub-

ject to division under the relevant Florida statute); *In re Marriage of Berthiaume,* 1991 WL 90839 (Minn.Ct.App.) (finding that a state statute explicitly provided that benefits received in lieu of Social Security were subject to division in marital dissolutions); *Olson v. Olson,* 445 N.W.2d 1 (N.D.1989) (interpreting a state pension statute as allowing payments made in lieu of Social Security to be subject to division); *Loudermilk v. Loudermilk,* 183 W.Va. 616, 397 S.E.2d 905 (1990) (approving the trial court's inclusion as marital property of a federal pension plan made in lieu of Social Security, by interpreting the Social Security statute as not including, and thus exempting, the pension plan); *Mack v. Mack,* 108 Wis.2d 604, 323 N.W.2d 153 (App.1982) (finding that a federal pension in lieu of Social Security is not the functional equivalent of Social Security because Social Security is not property like a pension); *Jefferies v. Jefferies,* 895 P.2d 835 (Utah Ct.App.1995) (although not reaching the question of distribution, finding that a federal pension in lieu of Social Security was a marital asset under state law).

21. *See Cornbleth v. Cornbleth,* 397 Pa.Super. 421, 580 A.2d 369 (1990) (finding that a state pension plan in lieu of Social Security should be exempt from the marital estate as a matter of equity); *Kohler v. Kohler,* 211 Ariz. 106, 118 P.3d 621 (App.2005) (same); *Silcox v. Silcox,* 6 S.W.3d 899 (Mo.1999) (interpreting a state statute to preclude division of a state pension plan in lieu of Social Security for the same reasons that Social Security is exempt); *Bohon v. Bohon,* 102 S.W.3d 107 (Mo.Ct.App. 2003) (further analyzing the pension plan at issue in *Silcox v. Silcox); Walker v. Walker,* 112 Ohio App.3d 90, 677 N.E.2d 1252 (1996) (recognizing the general rule in Ohio that Social Security and pension plans that are the "equivalent" of Social Security are not divisi-

operate as a "substitute" for Social Security, such as the one at issue here, are marital property and as such are subject to equitable division upon dissolution of the beneficiary's marriage. The legislation creating the WPD pensions, and our case law interpreting that legislation, support that conclusion.

Presently, all WPD pensions fall under one of three statutes: the 1978 City of Wilmington Police Pension Act; the 1984 City of Wilmington Police Pension Act; and the 1991 City of Wilmington Police Pension Act.[22] The statute that governed the WPD pension plan before the enactment of the 1978 City of Wilmington Police Pension Act, contained an anti-assignment provision virtually identical to that found in 42 U.S.C. § 407:

> (9) The right of any person to any payment under this act shall not be transferable or assignable at law or in equity, if[23] none of the monies paid or payable, or rights existing under this act shall be subject to execution, levy, attachment, garnishment or any other legal process or to the operation of any bankruptcy or insolvency laws.

Despite the similarity of the quoted language with that of the Social Security Act, the Family Court concluded in *Bledsoe v. Bledsoe* that husband's WPD police pension was a marital asset subject to equitable division.[24] The Family Court reasoned that:

I interpret the first part of that paragraph ["[t]he right of any person to any payment under this act shall not be transferable or assignable at law or in equity"] to mean that the employee—police officer cannot transfer or assign his right to receive this pension. I interpret the second section which exempts the pension from "execution, levy, attachment, garnishment, bankruptcy and other legal process" to protect the pension from creditors [not from a former spouse].... I rule that Husband's pension is a marital asset in which his former Wife is entitled to share. I also make the ruling with knowledge that the United States Supreme Court has protected railroad pensions *Hisquierdo v. Hisquierdo*, 439 U.S. 572 [99 S.Ct. 802, 59 L.Ed.2d 1] (1979) and military pensions, *McCarty v. McCarty*, 47 U.S.L.W. 4850 (1981).[25]

In later-enacted WPD pension statutes, the above-quoted anti-assignment provision was modified. Those modifications evidence a legislative intent to permit equitable division of such WPD pensions by the Family Court in divorce proceedings. The 1978 City of Wilmington Police Pension Act, which governs Husband's pension, contains the following anti-assignment provision:

> Sec. 28A–57. Limitation on execution, attachment, etc.
>
> None of the benefits provided under this plan shall be subject to the claims of, or

---

ble, but may be evaluated and considered in making an equitable distribution of the spouses' marital assets).

**22.** *Forrester v. Forrester*, No. CN06–01118, at 9 (Del.Fam.Ct.2006).

**23.** This language was quoted in *Bledsoe v. Bledsoe*, No.1947–81, at 10 (Del.Fam.Ct. 1982). Unfortunately, the *Bledsoe* decision provided no cite that would have enabled this

Court to find the original legislation that created the pension plan in effect at that time. The word "if" in the above quoted statute appears to be a typographical error. The correct word (in place of "if") would appear to be "and."

**24.** *Bledsoe v. Bledsoe*, No.1947–81, at 10 (Del. Fam.Ct.1982).

**25.** *Id.* at 10 (internal citations omitted).

to the execution, attachments, or other legal process *by a creditor* of a participant or beneficiary. No participant or beneficiary under this plan shall have any right to alienate, encumber or assign any of the benefits provided in this division, or any interest arising out of or created by this plan.[26] (emphasis added)

Consistent with the Family Court decision in *Bledsoe*, the 1978 anti-assignment provision exempts WPD pensions only from claims of (and legal processes involving) "creditors," but not claims and legal processes of or involving former spouses. Later amendments to the WPD pension plan statute (which are not applicable to Husband) confirm that interpretation. The 1984 City of Wilmington Police Pension Act contains no anti-assignment provision and does not otherwise limit the execution or the attachment of WPD pensions.[27] Thus, a former spouse could reach a pension covered by the 1984 Act. The 1991 City of Wilmington Police Pension Act[28] contains an anti-assignment

provision, that was last modified in 1998 to create an exception for "orders of the ... Family Court for a sum certain payable on a periodic basis." The current version provides:

§ 8803. Garnishment and assignment of benefits prohibited

*Except for orders of the Delaware Family ly Court for a sum certain payable on a periodic basis,* the benefits provided by this chapter shall not be subject to attachment or execution and shall be payable only to the beneficiary designated and shall not be subject to assignment or transfer. (emphasis added)[29]

The synopsis to the 1998 amendment recites that the modification "will allow [the] Family Court to attach and execute *collection of support obligations* by means of attaching pensions administered by the State."[30] Although the synopsis appears to limit the scope of the exception, a statutory synopsis cannot change the meaning of an unambiguous statute.[31] We discern no ambiguity in the

---

26. Wilmington City Code § 28A–57 (1968). The 1978 City of Wilmington Police Pension Act is codified as Article V, Division 2 (§ 39–146 to § 39–159) of Chapter 39 (Pensions) of the Wilmington City Code (2008).

27. The 1984 City of Wilmington Police Pension Act is codified as Article V, Division 4 (§ 39–206 to § 39–222) of Chapter 39 (Pensions) of the Wilmington City Code (2008).

28. As permitted by 11 *Del. C.* § 8805, the City of Wilmington elected to participate in the Delaware County and Municipal Police/Firefighter Pension Plan, as of August 1, 1991. *See* §§ 39–127 and 39–128 of Article V, Division 1 of Chapter 39 (Pensions) of the Wilmington City Code (2008). The Delaware County and Municipal Police/Firefighter Pension Plan is governed by the provisions of Chapter 88 of Title 11 of the Delaware Code (§ 8801 *et seq.*).

29. 11 *Del. C.* § 8803. The same language was inserted in the corresponding provisions for all other Delaware State, County and Mu-

nicipal pension plans. *See* 11 *Del. C.* § 8333 (Delaware State Police); 11 *Del. C.* § 8353 (Delaware State Police); 16 *Del. C.* § 6653 (Delaware Volunteer Firemen); 29 *Del. C.* § 5304 (Delaware State Employees); 29 *Del. C.* § 5503 (Delaware State Employees); 29 *Del. C.* § 5553 (Delaware County and Municipal Employees); 29 *Del. C.* § 5620 (Delaware State Judiciary).

30. 71 Laws 1998, ch. 337, § 2 (emphasis added).

31. *See Chrysler Corp. v. State*, 457 A.2d 345, 351 (Del.1983) (the synopsis of a legislative bill "may be used, on occasion, as a source from which legislative intent ... may be gleaned ... only if the Court determines that the language of the Statute is ambiguous and requires interpretation"). *See also Leatherbury v. Greenspun*, 939 A.2d 1284, 1290 (Del. 2007) (noting that "the synopsis accompanying the amendment" is "instructive" in determining the General Assembly's intent but that "unambiguous statutes are not subject to judi-

phrase "orders of the Delaware Family Court for a sum certain payable on a periodic basis." That language, by its terms, covers such Family Court orders irrespective of the purpose for which they are entered: satisfaction of "support obligations" (as stated in the synopsis), equitable distribution upon dissolution of a marriage,[32] or some other purpose.

In conclusion, under the 1978, 1984, and 1991 City of Wilmington Police Pension Acts, there is no statutory impediment to the division of WPD police pensions in divorce proceedings. The Family Court has divided WPD pensions in several cases, albeit summarily and without discussing the interplay between those pension plans and the Social Security system.[33]

Husband relies on *Peiffer v. Peiffer*, a case where the Family Court held that a City of Seaford (Delaware) police pension that was "in lieu of Social Security benefits" was not divisible because "[t]his Court does not award either party an interest in the other party's Social Security benefits [and] [a]ccordingly, the Court cannot award [wife] an interest in a Social Security substitute."[34] Husband's reliance on *Peiffer v. Peiffer* is, however, misplaced.

First, the successive amendments of the anti-assignment provision of the WPD pension statute (which progressively depart from the language of the anti-assignment clause of the Social Security Act) evidence that the Delaware General Assembly intended to treat WPD pension plans differently from Social Security. Second, the federal Social Security system is fundamentally different from a state-created retirement system based on a pension plan, including those that are a "substitute" for Social Security. As the United States Supreme Court indicated in *Flemming v. Nestor*, "the noncontractual interest of an employee covered by the [Social Security] Act cannot be soundly analogized to that of the holder of an annuity, whose right to benefits is bottomed on his contractual premium payments."[35] The reason is that the Social Security system is "a form of social insurance," whereas a pension plan is a contractual arrangement.[36]

cial interpretation."); *In re Adoption of Swanson*, 623 A.2d 1095, 1096–97 (Del.1993) ("[i]f the statute as a whole is unambiguous and there is no reasonable doubt as to the meaning of the words used, the court's role is limited to an application of the literal meaning of the words."); *Carper v. New Castle County Bd. of Ed.*, 432 A.2d 1202, 1205 (Del. 1981) (noting that "[t]he synopsis of the [legislative bill is] a proper source from which to glean legislative intent").

**32.** The Family Court generally has the authority to divide marital property, including pensions, for purposes of equitable distribution. *See* 13 *Del. C.* § 1513; *Gregg v. Gregg*, 510 A.2d 474, 480 (Del.1986); *Frank G.W. v. Carol M.W.*, 457 A.2d 715, 722 (Del.1983); *Robert C.S. v. Barbara J.S.*, 434 A.2d 383, 387 (Del. 1981). Where the pension is payable in a lump sum, it would be appropriate to divide the pension proceeds in the same manner as marital assets such as equity in a home or bank accounts. But where the pension proceeds are payable in periodic fixed amounts, it would be more appropriate to equitably divide the periodic payments themselves, thereby treating such divided pension in a manner akin to alimony and child support.

**33.** *See, e.g., In re Marriage of Richard H.B.*, 2002 WL 31452437 (Del.Fam.Ct.); *Sarah L.J. v. Anthony K.J.*, 2000 WL 1658484 (Del.Fam. Ct.); *In re Marriage of Wright*, 1990 WL 146417 (Del.Fam.Ct.); *Bledsoe v. Bledsoe*, No.1947–81, at 10 (Del.Fam.Ct.1982).

**34.** *Peiffer v. Peifer*, No. CN98–10082, at 4 (Del.Fam.Ct.1999).

**35.** *Flemming v. Nestor*, 363 U.S. 603, 610, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960).

**36.** *Id.* at 609, 80 S.Ct. 1367. Further emphasizing the distinction between a system of social insurance established by Congress and a contractual pension plan, the United

An employee's right to Social Security benefits is not an "accrued property right,"[37] whereas "employees who participate in a pension plan acquire vested contractual rights to the fruits of the pension fund upon fulfillment of the eligibility requirements for a pension."[38] Pension benefits, even where received as a "substitute" for Social Security, are, therefore, fundamentally different from Social Security which justifies the difference in their legal treatment.

Those jurisdictions that do not regard "substitute" pensions as marital assets recognize that participation in such plans inflicts "a double blow of sorts" to persons in Husband's position, because "the pension will become part of the marital estate and, thus, divided, yet there will be no Social Security benefit waiting to cushion this financial pitfall."[39] Similarly, it has also been pointed out that dividing such pensions might operate inequitably by penalizing public employees who do not participate in the Social Security system, yet would benefit private employees whose contributions to Social Security will not be considered marital property.[40]

■ These arguments are not without force, but our system of property division is capable of effectively alleviating those concerns. The Family Court is statutorily required to "equitably" divide the marital property, "in a way which will mitigate potential harm to the spouses."[41] Moreover, even though federal law preempts the *direct division* of Social Security proceeds, it does not preempt the Family Court from *considering* the existence and the amount of Social Security benefits in the course of an equitable property division, even where that consideration might lead the Family Court to alter its division of the marital estate.[42] In short, the Family Court is empowered to equitably divide marital property in cases involving pension plans that are a "substitute" for Social Security benefits, such as the one at issue here. For these reasons, we conclude that the Family Court correctly held that Husband's WPD pension was marital property and subject to equitable division like any other pension.

■ Husband next claims that, even if the Family Court was correct in holding that his WPD pension was a marital asset subject to equitable division, that court abused its discretion by awarding Wife 50% of that pension. Where the law has been correctly applied, we review decisions regarding a division of marital property

States Supreme Court noted in *Hisquierdo v. Hisquierdo* that: "Like Social Security, and unlike most private pension plans, railroad retirement benefits are not contractual. Congress may alter, and even eliminate, them at any time." *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 575, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979).

**37.** *Id.* at 608, 610, 80 S.Ct. 1367. *See also Mack v. Mack*, 108 Wis.2d 604, 323 N.W.2d 153, 156 n. 1 (App.1982) ("Although an employee's social security account increases in relative value over his working life, social security is not a property like a pension.").

**38.** *Grant v. Nellius*, 377 A.2d 354, 357 (Del. 1977).

**39.** *Cornbleth v. Cornbleth*, 397 Pa.Super. 421, 580 A.2d 369, 371–72 (1990).

**40.** *Eickelberger v. Eickelberger*, 93 Ohio App.3d 221, 638 N.E.2d 130, 135 (1994).

**41.** 13 *Del. C.* § 1513(a); *J.D.P. v. F.J.H.*, 399 A.2d 207, 210 (Del.1979). The statute also allows the Family Court to modify its orders "upon a showing a real and substantial change of circumstance." 13 *Del. C.* § 1519(a).

**42.** *See* 13 *Del. C.* § 1513(a)(8), which permits the Family Court to consider the "economic circumstances of each party at the time the division of property is to become effective."

for abuse of discretion.[43] The Family Court has "broad discretion" in dividing marital property, in general, and pension plan benefits, in particular.[44] Thus, the issue is whether the trial court abused its discretion in awarding Wife 50% of the WPD pension.

■ After ruling that Husband's WPD pension was subject to division, the Family Court expressly stated that it had to "consider the inequities involved and avoid any imbalance that may result given that Husband is not entitled to a portion of Wife's accrued social security benefits."[45] The trial judge compared "the respective economic positions of the parties, their employment history, annual income, and assets," and then awarded Wife a 50% share in that portion of Husband's WPD pension that was earned by Husband during the marriage.[46] Conversely, the Family Court applied the same formula and the same percentage in dividing Wife's State of Delaware Defined Benefit Pension Plan. Additionally, the Family Court awarded Husband 50% of Wife's Roth IRA account and her two 403(b) Plans. In these circumstances, we find no abuse of discretion in the overall division of the parties' pension accounts by the Family Court.

## II. Husband's Compensatory Time

■ Husband next argues that the Family Court erred both as a matter of law and abused its discretion in dividing his compensatory time. This issue is also one of first impression before this Court.

■ Under 13 *Del. C.* § 1513, "all property acquired by either party subsequent to the marriage" is marital property, unless it falls under one of four statutory exceptions (none of which are applicable here).[47] Because Husband may elect to convert to cash all his accumulated compensatory time, at any time during his employment, such compensatory time represents a vested "property interest," and, having been "acquired ... subsequent to the marriage," is therefore subject to division as a marital asset.[48] The question presented is whether the Family Court

43. *W. v. W.*, 339 A.2d 726, 727 (Del.1975).

44. *Linder v. Linder*, 496 A.2d 1028, 1030 (Del. 1985); *Robert C.S. v. Barbara J.S.*, 434 A.2d 383, 387 (Del.1981).

45. *Forrester v. Forrester*, No. CN06–01118, at 10 (Del.Fam.Ct.2006). The trial judge further noted that "rather than subtracting out the hypothetical social security contributions and their anticipated future value, the Court can rectify any imbalance by awarding a lesser or greater portion of the pension to Wife after comparing the respective economic positions of the parties, their employment history, annual income, and assets as required by the statute." *Id.*

46. That method of dividing pension benefits is referred to as the *Cooper* formula and was approved by this Court in *Jerry L.C. v. Lucille H.C.*, 448 A.2d 223, 225–26 (Del.1982) ("The marital interest in each payment will be a fraction of that payment, the numerator of the fraction being the number of years (or months) of marriage during which benefits were being accumulated, the denominator being the total number of years (or months) during which benefits were accumulated prior to when paid.").

47. *See* 13 *Del. C.* § 1513(b).

48. *Gregg v. Gregg*, 510 A.2d 474, 480 (Del. 1986) ("Property interests not yet reduced to possession can be acquired during marriage within the meaning of [13 *Del. C.*] § 1513, and if such an interest still exists at the time of a divorce, the interest is to be regarded as marital property."); *Robert C.S. v. Barbara J.S.*, 434 A.2d 383, 384 (Del.1981) (contrasting a "mere expectancy" to receive a benefit, which is not marital "property," and a nonvested pension benefit, which is a property right subject to division between the parties).

erred in the manner it chose for dividing that marital asset.

Husband claims that the Family Court erred by not dividing the compensatory time on an "if, as, and when" basis. Specifically, Husband argues that only the hours, if any, that remain unutilized at the time he ceases employment with the WPD should be divided.[49] Husband's argument rests upon on an analogy between compensatory time and unused vacation and sick time. In *Kerr v. Kerr*, the Family Court held that both unused vacation and sick leave "are deferred compensation, similar to a pension [and] are therefore [marital assets,] divisible to the extent that they were earned during the marriage."[50] The Family Court further held that in dividing such marital assets, "the 'if, when and as

the benefits are paid' approach shall control."[51]

■ Here, the record indicates that Husband accumulated his compensatory time by: (i) working overtime and taking additional assignments and (ii) by not taking vacation or sick time. In that sense, Husband's compensatory time is akin to vacation or sick leave time. But, the compensatory time at issue here is different from vacation and sick leave time in one significant respect.[52] Usually, vacation and sick leave time is convertible to cash *only* upon termination of employment.[53] Therefore, the receipt of the monetary benefit is contingent upon the spouse not using that accumulated vacation and sick time before the termination of employment, and the monetary value of the bene-

49. Wife's request was for a portion of the monetary value of Husband's compensatory time on an "if, as, and when basis." The Family Court held that it was not necessary to render an award on an "if, as, and when basis" because "there are no conditions precedent to Husband receiving a payout," since Husband could convert the compensatory time into cash whenever he chose. *Forrester v. Forrester*, No. CN06–01118, at 12 (Del.Fam. Ct.2006).

50. *Kerr v. Kerr*, 1990 WL 91599, at *4 (Del. Fam.Ct.1990). Other states are divided on the issue of whether vacation and/or sick leave represents a marital asset. *See Grund v. Grund*, 151 Misc.2d 852, 573 N.Y.S.2d 840, 843–44 (N.Y.Sup.1991); *Lesko v. Lesko*, 184 Mich.App. 395, 457 N.W.2d 695, 699 (1990); *In Re Marriage of Hurd*, 69 Wash.App. 38, 848 P.2d 185, 191–92 (1993); *Schober v. Schober*, 692 P.2d 267, 268 (Alaska 1984); *Brotman v. Brotman*, 528 So.2d 550, 551 (Fla.Dist.Ct. App.1988) (holding that vacation and/or sick leave is a marital asset). *But see Bratcher v. Bratcher*, 26 S.W.3d 797, 800–01 (Ky.App. 2000); *Thomasian v. Thomasian*, 79 Md.App. 188, 556 A.2d 675, 681 (1989) (holding that vacation and/or sick leave is not a marital asset).

51. *Kerr v. Kerr*, 1990 WL 91599, at *4 (citing *Jerry L.C. v. Lucille H.C.*, 448 A.2d 223, 225

(Del.1982) (approving the "if, as, and when" approach for dividing pension plan benefits where the "Family Court Judge after examining the written expert opinions ... submitted concluded that fixing a present value was inappropriate"); *Husband B. v. Wife B.*, 396 A.2d 169, 172 (Del.Super.1978) (adopting the "if, as, and when" approach for dividing pension rights and noting that "pension rights present peculiar difficulties with regard to division [because] [t]hey are often subject to future contingencies and therefore difficult to value in terms of present worth.")).

52. The importance of that dissimilarity (immediate convertibility to cash versus convertibility only upon retirement or termination of employment) has been emphasized by other courts. *See In Re Marriage of Hurd*, 69 Wash. App. 38, 848 P.2d 185, 191–92 (1993); *Lesko v. Lesko*, 184 Mich.App. 395, 457 N.W.2d 695, 701–02 (1990) (Holbrook, J. dissenting).

53. *See, e.g., Kerr v. Kerr*, 1990 WL 91599, at *3; *Grund v. Grund*, 573 N.Y.S.2d at 843–44; *In Re Marriage of Hurd*, 848 P.2d at 191–92; *Smith v. Smith*, 733 S.W.2d 915, 916–17 (Tex. App.1987); *In re Marriage of Zummo*, 167 Ill.App.3d 566, 118 Ill.Dec. 339, 521 N.E.2d 621, 623–24 (1988); *Brotman v. Brotman*, 528 So.2d at 551; *Bratcher v. Bratcher*, 26 S.W.3d at 800–01; *Thomasian v. Thomasian*, 556 A.2d at 681.

fit is not known until that point. Here, in contrast, the compensatory time may be converted to a monetary benefit at any time during Husband's employment. Moreover, the monetary value of that compensatory time is readily ascertainable at any point in time. For these reasons, the Family Court correctly concluded that a division on an "if, as, and when" basis would be inappropriate. Had that approach been adopted, Wife could effectively be precluded from sharing in that marital asset, because Husband could "cash in" any remaining balance before terminating his employment, or could use that balance towards his early retirement.[54]

Finally, Husband claims that the Family Court order improperly forces him "to cash in a portion of his comp[ensatory] time to pay to [Wife]." This contention lacks merit, because the Family Court considered the possibility that Husband might want to preserve his compensatory time for vacation or retirement purposes, and gave Husband the option of deducting—from his portion of the marital estate—the monetary value of Wife's entitlement to half of the compensatory time.[55]

We conclude that the Family Court committed no legal error and did not abuse its discretion in dividing the monetary value of the compensatory time.

54. The "if, as, and when" standard is appropriate where entitlement to a marital asset, or the value of a marital asset, is contingent upon a future event (*e.g.* entitlement to receive a non-vested pension is contingent upon continued employment for a number of years; value of stock options is not known until the option is exercised; amount and monetary value of unused vacation and sick leave not known until cessation of employment). No such contingencies are present here. On the date of the parties' separation, Husband was entitled to receive the monetary equivalent of the compensatory time, and the monetary value thereof was certain.

## CONCLUSION

For the foregoing reasons, the judgments of the Family Court are affirmed.

55. The Family Court held that "Wife is entitled to half of the 457 hours accumulated during the marriage for a total of 228.5 hours at Husband's hourly rate of $32.00. Within ninety (90) days from the date of this Order, Husband shall either: (1) request an immediate payout of these hours and turn that amount over to Wife; or (2) Husband shall submit proof of an accurate accounting of those hours to Wife and deduct that amount from his portion of the marital estate." *Forrester v. Forrester*, No. CN06–01118, at 12 (Del.Fam.Ct.2006).