IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| LESLIE MILLER,[1] | § |
| | § No. 471, 2014 |
| Respondent-Below, | § |
| Appellant, | § |
| | § Court Below: Family Court |
| v. | § of the State of Delaware, |
| | § in and for New Castle County |
| AARON MILLER, | § File No. CN10-03092 |
| | § Petition No. 14-03599 |
| Petitioner-Below, | § |
| Appellee. | § |

Submitted: November 12, 2014
Decided: December 19, 2014

Before **STRINE**, Chief Justice, **HOLLAND**, and **VALIHURA**, Justices.

## **O R D E R**

This 19th day of December 2014, upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1) Leslie Miller ("the Wife") filed this appeal from a Family Court decision, dated July 29, 2014, which granted Aaron Miller's ("the Husband") motion to reduce or terminate alimony. We find no abuse of the Family Court's discretion in this matter. Accordingly, we affirm the judgment on appeal.

(2) The record reflects that the parties were married on September 2, 1999 and divorced on July 15, 2010. As a result of court proceedings

---

[1] The Court assigned pseudonyms to the parties pursuant to Supreme Court Rule 7(d).

ancillary to their divorce, the Husband was ordered to pay alimony to the Wife of $3,327.75 per month. The Husband's alimony payments were scheduled to increase after twenty-four months to $3,432.75 per month (after the Wife paid off her child support arrears) and would terminate after a total of thirty-five months.

(3) On February 19, 2014, the Husband filed a petition to reduce or terminate his alimony obligation. The Husband asserted that there was new evidence that the Wife had monthly cash income from several business ventures totaling between $4,000 and $10,000 per month. The Husband argued that this evidence was contrary to $15,000 annual income that the Family Court attributed to the Wife in its alimony award. The Husband argued that the Wife deliberately had failed to disclose these additional sources of income to the Family Court during the ancillary hearing. The Wife filed a response denying the Husband's allegations.

(4) The Family Court held a hearing on the Husband's motion for modification of alimony on June 19, 2014. Both parties appeared for the hearing with their counsel. The Husband presented the testimony of the Wife's alleged former lover, Mark. Mark testified that he met the Wife after she had responded to his online personal advertisement seeking a romantic

relationship.[2]    Mark testified that he and the Wife were romantically involved for several months, that she had spent the night at his house on multiple occasions, that they had taken several trips together, and that he had given her about $5,000 worth of jewelry as gifts.  Mark testified that the Wife had told him about several business ventures that she was involved in, including an auto body shop and a catering business.  He testified that the Wife had told him that she was a partner in a business with her brother but acted as a silent partner so that the Husband would not know that she was involved in the business.  Mark further testified that he observed the Wife receiving checks and thick envelopes, presumably containing cash, from some of these ventures.  Mark acknowledged that he was upset with the Wife after their relationship ended and she refused to return the jewelry he had given to her.  He testified that he had contacted the Husband in an effort to exact some type of revenge against the Wife.

(5)    The Husband also presented the testimony of the Wife who testified that the only income she earns is $500 every two weeks working as a receptionist at a nail salon, in addition to the alimony and occasional loans

---

[2] The Wife denied ever being in a romantic relationship with Mark.  She testified that she had responded to his online advertisement because she was seeking to hire a private investigator.  The Husband submitted a copy of the online advertisement, however, which reflected that Mark had been seeking a romantic relationship and did not mention his occupation as a private investigator.

3

she receives from family members. She denied being involved in any other business ventures. The Husband's counsel questioned the Wife extensively about deposits she made into her bank account between January 2013 and March 2014. The deposits totaled almost $68,000 (not including over $39,000 in deposits from the Husband's alimony payments) and her withdrawals totaled almost $39,000.

(6) After considering all of the evidence, the Family Court concluded that the Wife's testimony was not credible and that her explanations for various deposits and withdrawals simply did not add up. Moreover, while acknowledging Mark's bias against the Wife, the Family Court nonetheless concluded that his testimony about how he met the Wife was substantiated by the online advertisement and thus more credible than the Wife's testimony on this point. In fact, the Family Court concluded that the "Wife was dishonest in her testimony about how she met [Mark]." The Family Court found this lack of truthfulness tainted her overall credibility. Ultimately, the Family Court concluded that the Wife was not dependent on the Husband for support and that the Husband's petition to terminate alimony should be granted. The Wife appeals.

(7) In her opening brief on appeal, the Wife contends that the Family Court abused its discretion in determining that she was not

4

dependent by relying on the testimony of a biased witness. The Wife also contends that the Family Court erred by ignoring her testimony substantiating that she is dependent on the Husband for support.

(8)     Under 13 *Del. C.* § 1519(a)(4), the Family Court may modify or terminate alimony "only upon a showing of real and substantial change in circumstances." On appeal from the Family Court's decision regarding alimony, this Court reviews the law and the facts, as well as the inferences and deductions made by the trial judge.[3] We review conclusions of law *de novo*.[4] If the Family Court correctly applied the law, we review under an abuse of discretion standard.[5] The Family Court's factual findings will not be disturbed on appeal unless those findings are clearly wrong and justice requires their overturn.[6] When the determination of facts turns on the credibility of the witnesses who testified under oath before the trial judge, this Court will not substitute its opinion for that of the trial judge.[7]

(9)     In this case, the Family Court considered all of the evidence presented by the parties and determined that Wife was not truthful in certain aspects of her testimony, which called her credibility into question with

---

[3] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).

[4] *Forrester v. Forrester*, 953 A.2d 175, 179 (Del. 2008).

[5] *Jones v. Lang*, 591 A.2d 185, 186-87 (Del. 1991).

[6] *Forrester v. Forrester*, 953 A.2d at 179.

[7] *Wife (J.F.V) v. Husband (O.W.V., Jr.)*, 402 A.2d at 1204.

respect to all of her testimony. The Family Court acknowledged that the Husband's star witness, Mark, had a grudge against the Wife. Nonetheless, the Family Court determined that Mark was more credible than the Wife. These credibility determinations were within the Family Court's discretion. We conclude that the Family Court's findings of fact are supported by the record and that the Family Court did not commit any error of law. Accordingly, the judgment below must be affirmed.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

*/s/ Leo E. Strine, Jr.*

Chief Justice