IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| REBECCA D. THREAD,[1] | § | |
| | § | No. 204, 2019 |
| Respondent Below, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. CK08-03220 |
| ETHAN C. DILLARD, JR., | § | Petition No. 17-37972 |
| | § | |
| Petitioner Below, Appellee. | § | |

Submitted:    October 25, 2019
Decided:      November 26, 2019
Revised:  November 27, 2019

Before **VALIHURA**, **VAUGHN**, and **TRAYNOR**, Justices.

# **O R D E R**

Upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    The appellant ("Ex-Wife") filed this *pro se* appeal from a Family Court order requiring Ex-Wife to transfer her interest in jointly-titled real property to the appellee ("Ex-Husband").  On appeal, Ex-Wife contends that the Family Court failed to account for property-related expenditures made by Ex-Wife, erroneously valued the property based on an outdated appraisal instead of its current value, and failed to order Ex-Husband to pay Ex-Wife rent for the period of Ex-Husband's exclusive use

---

[1] The Court previously assigned pseudonyms to the parties pursuant to Supreme Court Rule 7(d).

of the property. We conclude that the Family Court did not abuse its discretion and affirm the judgment of the Family Court.

(2) In January 2006, when the parties were in a relationship but before they married, Ex-Husband purchased the subject property, which is located in Dover, for $530,000.[2] He made a cash down payment of $110,000, which he obtained by refinancing the mortgage on a property he owned in Maryland; he obtained a mortgage on the Dover property for the balance of the purchase price. In September 2006, Ex-Wife paid Ex-Husband $60,000 to purchase a ½ interest in the Dover property, and Ex-Husband executed a deed conveying the property from himself to himself and Ex-Wife.

(3) The parties married in April 2007 and divorced in September 2010. Ex-Husband has had exclusive use and possession of the property since at least 2010.

(4) On May 30, 2013, the Family Court entered an order resolving matters ancillary to the parties' divorce. In that order, the Family Court held that the Dover property was not marital property, and that it therefore was not subject to division by the court under 13 *Del. C.* § 1513.[3] In December 2017, Ex-Husband, with the

---

[2] Because of a malfunction in the courtroom recording equipment, unknown to the parties or the court during the Family Court hearing in this matter, a portion of the proceedings, including Ex-Wife's testimony, was not recorded; therefore, no transcript of that portion of the proceedings is available. As discussed further below, we have concluded that this appeal can be resolved on the basis of the undisputed facts, giving the benefit of the doubt to the Ex-Wife's assertions at the hearing and in her submissions to the Family Court.

[3] Section 1513 defines marital property and provides that, in a divorce proceeding, the Family Court "shall, upon request of either party, equitably divide, distribute and assign the marital

2

assistance of counsel, filed a petition seeking disposition of the property under 10 *Del. C.* § 921(14). That statute vests the Family Court with exclusive original civil jurisdiction over proceedings involving:

> Petitions by persons formerly married to each other seeking an interest in or disposition of jointly titled real property, where such property was not disposed of (i) by agreement of the parties, or (ii) by virtue of ancillary proceedings pursuant to § 1513 of Title 13. In dividing said property the Family Court shall apply equitable principles unless there is a written agreement signed by the parties regarding the disposition of said property. Unless there is a written agreement signed by the parties the Family Court shall not consider the factors enumerated in § 1513 of Title 13. . . .[4]

(5) The Family Court held an evidentiary hearing on the petition on November 1, 2018, during which the court received evidence regarding the parties' contributions to the purchase of the property and their other expenditures relating to the property. After the hearing, the court requested supplemental submissions from the parties regarding rent—specifically, whether Ex-Husband was obligated to pay rent to Ex-Wife, whether he did so, and whether the payment of rent should be offset by any other consideration.[5]

---

property between the parties without regard to marital misconduct, in such proportions as the Court deems just after considering all relevant factors," including certain factors set forth in the statute. 13 *Del. C.* § 1513(a), (b).

[4] 10 *Del. C.* § 921(14).

[5] *See generally Carradin v. Carradin*, 1980 WL 268076, at *2 (Del. Ch. Sept. 22, 1980) (stating that 25 *Del. C.* § 702 "grants to a co-tenant not in possession a right of action against the co-tenant in possession for the rental value of the premises").

(6)     After receiving the parties' supplemental submissions, the Family Court entered an order requiring Ex-Wife to execute a quit-claim deed giving Ex-Husband sole title to the property.  The court found that the property had been appraised at a value of $440,000 to $465,000 and that the mortgage on the property had an outstanding principal balance of $432,668.  The Family Court also found, and Ex-Wife does not dispute, that Ex-Husband "shouldered all of the responsibility for the mortgage payment, to a degree about which the Court received no evidence;" that he had paid $3,100 in taxes on the property since 2010; and that he had paid $17,500 for insurance on the property since 2011.[6]

(7)     Using a value of $452,500 (the midpoint of the value range) and subtracting the mortgage balance, the court determined that the net value of the property was $19,832.  The court then credited Ex-Husband with the taxes and insurance he had paid (totaling $20,600) and concluded that because his costs exceeded the net value of the property, Ex-Husband would be permitted to retain ownership of the property without paying any remuneration to Ex-Wife.  The court did not give credit to Ex-Husband for more than $29,000 in costs that he incurred to maintain and improve the property, because Ex-Husband "introduced no evidence

---

[6] Ex-Wife does not claim that she contributed any money toward the property after 2010; nor does she claim that she ever made mortgage payments or paid the taxes, insurance, or other expenses that were required to maintain ownership of the property.

4

that Ex-Wife consented to those expenditures."[7]  The court also did not give credit to Ex-Wife for costs that she claimed to have incurred in improving the property during the marriage, because she proffered no evidence regarding those expenditures.

(8)     With respect to the issue of rent, the court found that Ex-Husband had exercised exclusive use and possession of the property since 2008 without paying Ex-Wife any rent.[8]  Because Ex-Wife failed to submit any evidence supporting a claim for rent, however, the court determined that Ex-Wife was not entitled to any remuneration.

(9)     Ex-Wife has appealed to this Court.  On appeal from the Family Court, we review the facts and the law, as well as the inferences and deductions made by the trial judge.[9]  We review conclusions of law *de novo*.[10]  If the Family Court

---

[7] File No. CK08-3220, Petition No. 17-37972, mem. op. at 6 (Del. Fam. Ct. Apr. 15, 2019) (citing *Wilson v. Lank*, 107 A. 772, 773 (Del. Orphans' Ct. Aug. 2, 1919) (stating that "where the land cannot be equitably divided, and the land is sold under partition proceedings, and one of the tenants has made improvements to the land with the consent of his co-tenant, that the improving tenant will be compensated proportionately for the enhanced value of the land thereof, out of the proceeds of the sale" and that "[t]he questions now raised are different, for here there is a denial of consent of the other co-tenants to the improvements and of knowledge thereof until after they had been made"), and *In re McCaffrey*, 1995 WL 347794, at *1 (Del. Ch. May 31, 1995) ("It is the general rule that absent an agreement or consent by other cotenants, a cotenant in sole possession is not entitled to contribution from the other cotenants for repairs.  The same rule holds for improvements." (internal quotations omitted))).

[8] Ex-Wife contends that this finding was erroneous, and that she actually remained in the property until 2010.  Because Ex-Wife's claim for rent would presumably be higher if Ex-Husband had exclusive use of the property for a longer period of time, we cannot discern how this argument advances Ex-Wife's appeal.  We therefore do not address it further.

[9] *Clarke v. Charles*, 2015 WL 1601389, at *2 (Del. Apr. 8, 2015).

[10] *Id.*

correctly applied the law, we review decisions regarding the equitable division of property between former spouses for an abuse of discretion.[11]  We will not disturb findings of fact unless they are clearly wrong and must be overturned in order to do justice.[12]

(10)   On appeal, Ex-Wife argues that the Family Court erred by (i) valuing the property based on an outdated appraisal instead of its current value; (ii) failing to credit Ex-Wife for her property-related expenditures; and (iii) failing to award Ex-Wife rent for the period that Ex-Husband had exclusive use of the property.  She seeks payment of at least $129,600 in rent, payment of a "sum of money equal to her interest in the property at its current 2019 value," and a refund from Ex-Husband of the $60,000 she paid for her interest in the property and the $37,000 she claims to have paid in property-related expenses.

(11)   Under 10 *Del. C.* § 921(14), the Family Court must apply equitable principles in dividing jointly titled real property.[13]  Moreover, in the absence of a written agreement between the parties,

> such factors as the history of the marriage, the relative earning abilities of the parties, their debts and the value of other property [are] not relevant to the inquiry.  The focus is upon the particular property sought to be divided and the claims of the parties related to that property. While the Court may, in rare cases, dispense with a sale, the normal course, unless the parties otherwise consent, is to order a sale and divide

---

[11] *Forrester v. Forrester*, 953 A.2d 175, 185-86 (Del. 2008).
[12] *Id.* at 179.
[13] *Cooper v. Cooper*, 2015 WL 3870514, at *2 (Del. June 22, 2015).

6

the proceeds after the payment of all debts and liens. The court may, of course, consider the relative contributions of the parties in the payment of joint liens; their maintenance contributions (or, conversely, the commission of waste) and the use of the property enjoyed by one spouse since the divorce.[14]

(12) In this case, the court considered the value of the equity in the property; gave Ex-Husband credit for the taxes and insurance he paid since 2010, but not the mortgage payments he made; and determined that there was insufficient evidence to give either party credit for their other expenditures related to the property or to award Ex-Wife rent. We find no reversible error in the judgment of the Family Court.

(13) First, the Family Court's determination of the value of the property does not warrant reversal. Petitioner's Exhibit 3, admitted at the hearing, is an appraisal dated October 10, 2018, which values the property at $465,000. With her post-hearing, supplemental submission, Ex-Wife submitted the first page of an appraisal dated October 31, 2009, which valued the property at between $440,000 and $465,000 as of December 3, 2008. Ex-Wife presented no evidence of the current value of the property. Even using the higher value of $465,000 from the 2018 appraisal, rather than the midpoint of the 2018 appraised value and the 2008 appraised value, the equity in the property was $32,332. Subtracting the Ex-Husband's expenditures on taxes and insurance ($20,600) leaves a net value of $11,732. Thus, Ex-Wife's ½ share of the net equity would be $5,866. Putting aside

---

[14] *Derby v. Derby*, 1991 WL 247787, at *2 (Del. Oct. 24, 1991).

the parties' later expenditures for the upkeep or improvement of the property, which are addressed elsewhere in this order, and considering Ex-Wife's factual assertions in the light most favorable to her—including her assertion that Ex-Husband used the $60,000 that he received from her for his own purposes, rather than to pay down the mortgage as she claims he should have done—the basic economics of the parties' contributions are as follows: Ex-Wife paid $60,000 for a ½ interest in the property, and Ex-Husband paid $470,000 ($110,000 cash, plus a $420,000 loan for which he is solely responsible, minus the Ex-Wife's payment to him of $60,000). Thus, even without crediting Ex-Husband for any mortgage payments that he made, which were necessary in order for the parties to continue to own the property, we conclude that the Family Court did not err by declining to award Ex-Wife any remuneration.

(14) Second, the court did not err by declining to credit Ex-Wife for the property-related expenditures that she made in addition to the $60,000 that she paid for her interest in the property. The Family Court's decision indicates that Ex-Wife presented no evidence of those expenditures, and the record does not reflect that Ex-Wife offered at the hearing any documentary evidence concerning the amount or purposes of those expenditures. Ex-Wife asserts that she made expenditures of more than $37,000 in and around 2006. In support of that assertion, she attached to her post-trial, supplemental submission to the Family Court a document that appears to be a record prepared by Ex-Wife of her home-related expenditures during the

8

marriage.[15] Even assuming the accuracy of this document and considering it in the light most favorable to Ex-Wife, it does not warrant reversal of the Family Court's decision not to credit Ex-Wife with these expenditures. The document indicates that the vast majority of the expenses were for personal property such as furniture and lawn equipment. Division of personal property is beyond the scope of an action to dispose of property under Section 921(14), and any claims related to personal property should have been raised in the parties' ancillary proceedings.[16]

(15) Finally, the Family Court did not err by denying Ex-Wife's claim for rent during the period that Ex-Husband had exclusive use of the property.[17] Ex-Wife acknowledges that she did not present to the Family Court any evidence of the market rent for the property, and this Court will not consider evidence that was not

---

[15] As noted *supra* note 2, Ex-Wife's testimony at trial was not preserved in the record, and we therefore cannot discern whether Ex-Wife testified regarding those expenses. Because of these unusual circumstances, we have considered the supplemental exhibit that she submitted to the Family Court, even though it does not appear to have been entered into evidence. For the reasons discussed in the text, we have concluded that it does not change the outcome of this case.

[16] *See generally Derby*, 1991 WL 247787, at *2 (stating that, in the absence of a written agreement between the parties, "such factors as . . . the value of other property [are] not relevant" in an action dividing jointly-titled real property under Section 921(14); rather, the "focus is upon the particular property sought to be divided and the claims of the parties related to that property").

[17] *See generally Carradin v. Carradin*, 1980 WL 268076, at *2 (Del. Ch. Sept. 22, 1980) (stating that 25 *Del. C.* § 702 "grants to a co-tenant not in possession a right of action against the co-tenant in possession for the rental value of the premises"); *Haygood v. Parker*, 2013 WL 1805602 (Del. Ch. Apr. 30, 2013) ("Delaware law is clear that absent an agreement to waive rent, a cotenant not in possession is entitled to a sum equal to his fractional share of the reasonable rental value of the property. The law is likewise clear that a cotenant not in possession also has a duty to contribute to the cotenant in possession as to any payments on a mortgage or for taxes.") (citations omitted).

presented to the trial court in the first instance.[18] In any event, she has not presented any evidence of the market rent on appeal either; her assertion that rent would be between $2300 and $2500 per month is mere speculation.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice

---

[18] *See Price v. Boulden*, 2014 WL 3566030, at *2 (Del. July 14, 2014) ("[T]his evidence was not available to the Family Court in the first instance, is outside of the record on appeal, and cannot properly be considered by this Court."); *Del. Elec. Coop., Inc. v. Duphily,* 703 A.2d 1202, 1206 (Del. 1997) ("It is a basic tenet of appellate practice that an appellate court reviews only matters considered in the first instance by a trial court.").