IN THE SUPREME COURT OF THE STATE OF DELAWARE

MICHAEL KILLEN,      §
     §    No. 471, 2022
    Respondent Below,      §
    Appellant,      §    Court Below: Family Court
     §    of the State of Delaware
    v.      §
     §    File No. CN22-01660
CANDICE ALBEN,      §
     §    Petition No. 22-04577
    Petitioner Below,      §
    Appellee.      §

Submitted: July 12, 2023
Decided: September 7, 2023

Before **VALIHURA**, **TRAYNOR**, and **LEGROW**, Justices.

Upon appeal from the Family Court of the State of Delaware. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**.

Curtis P. Bounds, Esquire, Kara M. Swasey, Esquire, Megan McGovern, Esquire, BAYARD, P.A., Wilmington, Delaware, *for Respondent Below, Appellant Michael Killen*.

Jennifer A. Hartnett, Esquire, HARTNETT & HARTNETT, Hockessin, Delaware, *for Petitioner Below, Appellee Candice Alben*.

**LEGROW**, Justice:

Michael Killen[1] appeals from a Family Court order awarding alimony to his ex-wife, Candice Alben, and directing Killen to maintain a pre-existing life insurance policy during the alimony period with Alben as the sole beneficiary. Killen challenges aspects of both rulings on appeal.

With respect to the alimony award, Killen argues on appeal that the Family Court designated the incorrect date for his payment obligations to begin. The parties continued to reside in the marital residence after their divorce and through the date of trial. Before the matter was submitted, the parties agreed to sell the home and to divide the proceeds at the court's direction. The court's order directed the parties to continue to split household expenses while they resided together and required Killen to begin making alimony payments upon the residence's sale. Killen argues that his alimony obligations instead should commence on the divorce date.

With respect to the insurance policy, Killen argues that the Family Court directed the policy's continued maintenance based on an inadequate record. Alben did not seek any relief concerning the policy at trial. Instead, the Family Court ordered the policy's maintenance *sua sponte*. According to Killen, the Family Court did not have sufficient evidence to order such relief and therefore abused its discretion.

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

For the reasons that follow, we affirm in part, reverse in part, and remand this matter to the Family Court. Designating the date on which a party's alimony obligations begin is within the Family Court's discretion, and we conclude the court did not abuse its discretion in this case. On the other hand, the Family Court did not have a sufficient factual record to order Killen to maintain the policy with Alben as the sole beneficiary. On remand, the Family Court may accept any additional evidence or submissions that it deems necessary to determine its authority, if any, to direct the policy's continued maintenance.

## I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On June 6, 2022, the Family Court entered a divorce decree ending the parties' marriage of 14 years and 9 months.[2] Candice Alben ("Wife") is a grant analyst at the University of Delaware, earning $56,000 annually.[3] Michael Killen ("Husband") earns $118,000 annually working for Xerox.[4] The parties moved to Delaware from New York City in 2014[5] and share two children.[6]

Throughout the marriage, the parties divided responsibility for household expenses under a longstanding arrangement: Husband paid the mortgage, while Wife paid "other bills" concerning the home.[7] Wife testified at trial that she always

---

[2] Am. Opening Br. Ex. A ("Ancillary Order") at 3, 17.
[3] Am. App. to Opening Br. at A18, A50.
[4] *Id.* at A77–78, A86–87.
[5] *Id.* at A35.
[6] *Id.* at A14, A18.
[7] *Id.* at A35.

fulfilled her end of this marital bargain, even during a period of unemployment after she left her job in New York City to relocate to Delaware.[8]  Wife also testified that Husband took sole responsibility for the mortgage but ultimately fell behind on monthly payments, resulting in a foreclosure notice being posted to the door of the marital residence around 2018.[9]  According to Wife, when she asked Husband about the notice, Husband told her not to worry about it because "the mortgage is not [Wife's] business."[10]

The parties separated on August 22, 2019, but continued to reside in the marital residence, along with their children, through the date of trial.[11]  For the first few years after the parties' separation, Wife resided in the master bedroom, while Husband resided in the shared living space.[12]  But shortly after Wife filed her divorce petition, Husband removed Wife's belongings to the "back room" of the home.[13]  From that point on, Wife shared a bedroom with the parties' daughter, and Husband resided in the master bedroom while purporting to limit Wife's access to the residence by placing signs on various doors throughout the home.[14]

---

[8] *Id.* at A35–36.
[9] *Id.* at A33–34.
[10] *Id.* at A34.
[11] *Id.* at A14–15.  The record on appeal does not indicate whether the parties have since moved out of the marital residence.
[12] *Id.* at A15–17.
[13] *Id.* at A16–17.  Wife filed her divorce petition on February 16, 2022.  Ancillary Order at 2.
[14] Am. App. to Opening Br. at A16–17, A32–33.

Trial on matters ancillary to the parties' divorce occurred on November 7, 2022.[15] Before the case was submitted, the parties agreed to list the marital residence for sale and to divide the sale proceeds at the Family Court's direction.[16] Trial was relatively inefficient. Husband was self-represented and, perhaps as a result, failed to provide the court with key information.[17] The gaps in Husband's evidence required the trial court to go to "great lengths to 'mine' information that Husband should have been prepared to present."[18]

The court issued its Order on Matters Ancillary to Divorce (the "Ancillary Order") not long after trial. Several aspects of the Ancillary Order are relevant to this appeal. First, the court found that Husband earned 67% of the parties' combined income.[19] The court ordered the proceeds from the sale of the marital home to be used to satisfy certain marital debts, with the balance to be divided by a 65–35 split between Wife and Husband.[20] Because the sale would inevitably take time, the court ordered each party to contribute to the mortgage payment and household expenses,

---

[15] Ancillary Order at 3.
[16] *Id.* at 10.
[17] For example, Husband sought credits for certain expenses that he claimed he incurred during the marriage, but he provided no supporting documentation and failed to include within those expenses his monthly payments on the life insurance policy. *Id.* at 8–9, 21. He also failed to provide documentation showing the amount in his 401(k) account that accrued before the parties' marriage. *Id.* at 13–14. The court ultimately gave Husband credit for his monthly payments on the life insurance policy. *See id.* at 27.
[18] *Id.* at 2.
[19] *Id.* at 20.
[20] *Id.* at 21.

with Husband paying two-thirds of those expenses and Wife paying for the remaining one-third.[21] The court's division of these expenses accorded with the portion of the household income each spouse earned.[22]

Second, the Family Court found Wife financially dependent and awarded her monthly alimony of $1,300 for 84 months.[23] Acknowledging that the parties "will undergo significant financial changes as they implement th[e] [A]ncillary [O]rder," the court ordered Husband's alimony obligations to begin upon the sale of the marital residence.[24]

Finally, after noting that Husband's life insurance policy (the "Policy") was "not discussed during the hearing," the court ordered Husband to "continue [the Policy]" and to "ensure that Wife remains the 100% primary beneficiary" until Husband's alimony obligations end.[25] On appeal, Husband points out that Wife did not expressly seek this relief.[26]

---

[21] *Id.* at 21, 24.

[22] The court found that Husband earned $118,000 per year (*id.* at 18), which constituted 67% of the household income. *Id.* at 20. The court found that Wife earned $56,000 per year. *Id.* at 18.

[23] *Id.* at 30. The maximum alimony period in light of the length of the parties' marriage was 88 months. *See id.* at 30 n.26; 13 *Del. C.* § 1512(d).

[24] Ancillary Order at 30.

[25] *Id.* at 21–22.

[26] *See* Am. Opening Br. at 4, 6 n.18.

## II.    STANDARD OF REVIEW

We review the Family Court's legal determinations *de novo*.[27] "If the law was correctly applied, we review the decision for an abuse of discretion."[28] We will disturb the Family Court's factual findings only if they are "clearly wrong."[29]

## III.    ANALYSIS

Husband presents two issues for review on appeal. First, he contends that the Family Court erroneously ordered him to maintain the Policy, with Wife as the sole beneficiary, without adequate evidence of the Policy's existence or terms.[30] Second, Husband argues that the Family Court erred by ordering his alimony obligations to commence upon the sale of the marital residence, instead of the parties' divorce date.[31]

**A.    The Family Court abused its discretion by ordering Husband to maintain the Policy based on an inadequate record**

Husband contends that the Family Court ordered the Policy's continued maintenance, with Wife as the sole beneficiary, based on an inadequate record.[32] Although Husband concedes that the Family Court has the statutory authority to order the continuation of life insurance policies under certain circumstances, he

---

[27] *Glanden v. Quirk*, 128 A.3d 994, 999 (Del. 2015).
[28] *Lankford v. Lankford*, 157 A.3d 1235, 1241 (Del. 2017) (quoting *Wright v. Wright*, 49 A.3d 1147, 1150 (Del. 2012)).
[29] *Forrester v. Forrester*, 953 A.2d 175, 179 (Del. 2008).
[30] Am. Opening Br. at 7–10.
[31] *Id.* at 12–13.
[32] *Id.* at 7–8.

argues that the trial "record is inadequate to justify the [court's] decision" because neither party raised the Policy during the proceedings and the court did not solicit evidence of, or otherwise request the parties' positions about, the Policy.[33]

The Family Court has express authority under 13 *Del. C.* § 1513(e) to "direct the continued maintenance and beneficiary designations of existing policies insuring the life of either party."[34]  The second sentence of Section 1513(e), however, cabins that authority to "policies originally purchased during the marriage and owned by or within the effective control of either party."[35]  Therefore, before the Family Court may order a policy's continued maintenance, the court must determine whether the policy at issue was purchased during the marriage and whether either party owned or effectively controlled the policy.

The Family Court's opinion does not address when the Policy was purchased or whether Husband owned or controlled it.[36]  Likely because of Husband's self-represented status at trial and failure to produce certain evidence, the Policy was neither the parties' nor the Family Court's focus.[37]  From our review of the record,

---

[33] *Id.* at 8–9.

[34] 13 *Del. C.* § 1513(e); *see* Am. Opening Br. at 8; Answering Br. at 10.

[35] 13 *Del. C.* § 1513(e).

[36] Although the trial court might have fairly inferred that Husband owned or controlled the Policy based on his monthly premium payments and the lack of any evidence to the contrary, the court received no evidence about when the Policy was purchased or who the designated beneficiaries were.

[37] Wife introduced five exhibits at trial consisting of two credit card statements (Am. App. to Opening Br. at A19–23), a retirement account statement (*id.* at A28–30), an expense sheet (*id.* at A36–44), and an exhibit purporting to show certain expenses relating to her dog (*id.* at A44–47).

the only record evidence of the Policy's existence was a line item on Husband's pay statements, which the court acknowledged during a colloquy concerning Husband's monthly expenses.[38] The court could not have determined whether it had authority to direct Husband to maintain the Policy based on that evidence alone.

In addition, the record does not support the Family Court's order that Husband maintain Wife as the Policy's sole beneficiary.[39] Section 1513(e) permits the Family Court to "direct the *continued* maintenance and beneficiary designations of existing policies insuring the life of either party."[40] The term "continued," as used in the statute, modifies both "maintenance" and "beneficiary designations."[41] The statute therefore precludes the Family Court from ordering the addition or removal of beneficiaries as well as the enlargement or reduction of the existing designees' beneficiary interests. Nothing in the record shows that Wife was a Policy beneficiary, much less the sole beneficiary.

---

Husband introduced three exhibits at trial consisting of an email between the parties (*id.* at A64–66) and two pay statements (*id.* at A96–99). The only testimony introduced at trial came from Husband and Wife (*see id.* at A14–100), and neither party testified about the Policy (*see* Ancillary Order at 21).

[38] Am. App. to Opening Br. at A96–99.

[39] Ancillary Order at 22 ("Additionally, Husband shall ensure that Wife remains the 100% primary beneficiary on this account so long as alimony is owed to Wife.").

[40] 13 *Del. C.* § 1513(e) (emphasis added).

[41] *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 147 (2012) ("When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series.").

8

Husband further argues that the Family Court committed reversible error by not ensuring that the life insurance coverage correlated with Husband's alimony obligations.[42] Relying on this Court's decision in *Norris v. Norris*,[43] Husband contends that when the Family Court directs the continued maintenance of life insurance for the benefit of an alimony recipient, the amount of coverage must correlate with the outstanding alimony obligation.[44] Otherwise, Husband asserts, there is a risk of over-insuring the alimony obligation.[45]

That argument, however, is at odds with Section 1513(e)'s plain language, which only permits the Family Court to direct "*continued* . . . beneficiary designations."[46] Husband's position suggests that the Family Court may—or even must—require a policyholder to reduce or enlarge a beneficiary's interest to correlate with the policyholder's support obligations. To do so, the court would need to direct changes to the beneficiary designations, instead of merely directing that the existing designations continue.

---

[42] Am. Opening Br. at 8–10.
[43] 808 A.2d 758 (Del. 2002).
[44] Am. Opening Br. at 8–9.
[45] *Id.* at 9.
[46] 13 *Del. C.* § 1513(e) (emphasis added); *see Glanden*, 128 A.3d at 1006 (finding the Family Court did not abuse its discretion by directing the maintenance of life insurance without sufficiently considering the value of an alimony award because Section 1513(e) "expressly authorizes the Family Court to 'direct the continued maintenance and beneficiary designations of existing policies insuring the life of either party'" (quoting 13 *Del. C.* § 1513(e))).

In addition, Husband's position extends *Norris* well beyond its holding. In *Norris*, this Court held that rules against reopening property-division orders did not prohibit the Family Court from modifying an order to maintain life insurance when the order's sole purpose was to backstop the policyholder's support obligations and those support obligations had decreased over time.[47] This Court noted that the Family Court's original order requiring maintenance of life insurance imposed that obligation as a safety net in the event that the policyholder died before fully satisfying his support obligations.[48] As those support obligations decreased over time, the Court explained, the amount of life insurance necessary to buttress those obligations also decreased.[49] Accordingly, the considerations informing rules against modifying property-division awards—namely, finality and the possibility of "chaotic results"—were not implicated.[50] *Norris* does not inform the analysis here and should not be interpreted as permitting the Family Court to decrease (or increase) a life insurance policy beneficiary's interest under Section 1513(e).

**B.** **The Family Court did not abuse its discretion by ordering Husband's alimony obligations to begin upon the sale of the marital residence**

Husband also argues that the Family Court erred by ordering his alimony obligations to run from the date of the marital residence's sale, instead of from the

---

[47] *Norris*, 808 A.2d at 759, 761.
[48] *Id.* at 761.
[49] *Id.*
[50] *Id.*

10

date of divorce.[51] According to Husband, designating an undefined date in the future as the date on which his alimony obligations commence undermines principles of finality and therefore warrants reversal.[52] In support of this contention, Husband cites several Family Court decisions in which the court, relying on this Court's decision in *Brenner v. Farrell*,[53] ordered alimony obligations to begin on the date of divorce based on the proposition that "[i]n all divorce cases, there must be finality as soon as possible."[54] Husband further contends that his alimony obligations should run from the date of divorce in light of "his substantial Court-ordered financial support of Wife while the parties reside together."[55]

The parties agree that *Brenner* does not control the outcome of this appeal.[56] Nevertheless, Husband maintains that *Brenner* is pertinent here because the Family Court has relied on it for the proposition that Delaware's alimony statute favors finality as soon as possible and, by extension, requires alimony obligations to accrue on the divorce date.[57]

---

[51] Am. Opening Br. at 12–13.

[52] *Id.* at 13.

[53] 865 A.2d 521, 2005 WL 77020 (Del. Jan. 11, 2005) (TABLE).

[54] Am. Opening Br. at 12 (quoting *ADC v. JDC*, 2011 WL 11549016, at *1 (Del. Fam. Dec. 2, 2011)); *see V.E.D., Sr. v. V.D.D.*, 2009 WL 5206718, at *3 (Del. Fam. Aug. 31, 2009) ("In reliance on *Brenner*, the Family Court recently held[] '[i]n all divorce cases there must be finality as soon as possible.'").

[55] Am. Opening Br. at 13.

[56] *See* Answering Br. at 14; Reply Br. at 3.

[57] *See* Reply Br. at 3. The Family Court has construed *Brenner* broadly:

> The Court finds the Supreme Court interprets the statutory authority to have intended for some finality in alimony obligations where the parties are married for less than 20 years. The Court finds under the existing facts and applicable legal

In *Brenner*, this Court held that the Family Court abused its discretion by awarding alimony in excess of the maximum time prescribed by Delaware's alimony statute.[58] After the parties' divorce, the husband in *Brenner* began making monthly alimony payments under a stipulated order.[59] Nearly two years after the husband began making the agreed-to payments, the Family Court issued its decision on ancillary matters, ordering the husband to make the statutory maximum number of monthly alimony payments, commencing shortly after the court issued its decision.[60] This Court reversed, finding that the Family Court abused its discretion by not crediting the payments already made under the parties' stipulated order toward the total alimony obligation.[61] *Brenner* thus stands for the narrow proposition that the Family Court may not award alimony in excess of the statutory limits.

Husband also points to Family Court decisions predating *Brenner* in which the court arguably construed Delaware's alimony statute, 13 *Del. C.* § 1512, as requiring the alimony period to commence on the divorce date.[62] Husband does not

---

authority, the date of divorce is the appropriate date for purposes of calculation of the period of alimony obligation.

*V.E.D., Sr.*, 2009 WL 5206718, at *4; *see also ADC*, 2011 WL 11549016, at *1 (citing *V.E.D., Sr.*, 2009 WL 5206718, at *4).

[58] *See Brenner*, 2005 WL 77020, at *1.

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] Am. Opening Br. at 12 n.38 (citing *M.H. v. D.L.*, 2005 WL 4674274, at *5 (Del. Fam. Sept. 21, 2005) and *Joan M.G. v. Scott A.G.*, 1998 WL 420743, at *6 (Del. Fam. Feb. 24, 1998)); Reply Br. at 3 n.2 (same).

12

substantively address why this Court should follow those decisions. But to the extent those decisions purport to adhere to a bright-line rule designating the divorce date as the beginning of a party's alimony obligations,[63] they misinterpret the statute. Section 1512 gives the Family Court discretion to decide when a party's alimony obligations should start.

The current version of Section 1512 does not address when a person's alimony obligations begin. The absence of prescriptive language is one indication that the legislature intended to give the Family Court discretion to determine the date from which a person's alimony obligations run. That reading is consistent with this Court's recognition of the "Family Court['s] . . . broad discretion in determining an alimony award."[64] The interpretation also finds support in the legislative history. Previous versions of Section 1512 expressly linked the alimony period to the divorce date, limiting the period of eligibility to "two years after marriage dissolution unless the parties were married for more than twenty years."[65] In 1988, the General

---

[63] *See M.H.*, 2005 WL 4674274, at *5 ("The parties were married for 8 years and 6 months, therefore, Wife's alimony eligibility *could extend for 4 years and 3 months from the date of the divorce*." (emphasis added)); *Joan M.G.*, 1998 WL 420743, at *6 ("Wife's maximum period of eligibility for alimony is six and one-half years *beginning on September 5, 1996, the date of the divorce*." (emphasis added)).

[64] *Wright*, 49 A.3d at 1153.

[65] 62 Del. Laws, ch. 168, § 1 (1979) ("The court may grant alimony . . . for a petitioner, or for a respondent who does not qualify for alimony under subdivision (2) above, commencing after the entry of a decree of divorce or annulment *but not to continue for more than two years after marriage dissolution* unless the parties were married for more than twenty years." (emphasis added)); *Michael J.F. v. Carmela L.F.*, 437 A.2d 579, 580 (Del. 1981) ("We hold, therefore, that the plain language of [Section] 1512(a)(3) under consideration means that, with the exceptions

Assembly untethered the eligibility period from the divorce date, providing instead that the eligibility period simply may "not . . . exceed 50% of the term of marriage" when the marriage lasted less than 20 years.[66] In other words, whereas the divorce date anchored the eligibility period under previous versions of Section 1512,[67] the current version of Section 1512 provides a floating eligibility period that the court defines in the exercise of its discretion, giving due consideration to all relevant factors, including the importance of finality. Here, the trial court did not abuse its discretion in concluding that the alimony period should begin upon the sale of the residence, since the parties had already agreed to list the home with an identified realtor and to accept any reasonable offer in excess of 90% of the list price.[68]

Husband further argues that the alimony period should run from the divorce date because the Family Court ordered Husband to shoulder a larger portion of the mortgage payment and household costs while the house was on the market and the parties resided under the same roof.[69] The Family Court did not abuse its discretion

---

noted in the Statute, a grant of alimony may not continue for more than 2 years after the entry of the divorce decree.").

[66] *See* 66 Del. Laws, ch. 414, § 1 (1988) (codified as amended at 13 *Del. C.* § 1512). The relevant language of the 1988 amendment appears in the current version of Section 1512. *See* 13 *Del. C.* § 1512(d) ("A person shall be eligible for alimony for a period not to exceed 50% of the term of the marriage with the exception that if a party is married for 20 years or longer, there shall be no time limit as to his or her eligibility; however, the factors contained in subsection (c) of this section shall apply and shall be considered by the Court.").

[67] The pre-*Brenner* decisions of the Family Court upon which Husband relies followed this approach notwithstanding the 1988 amendment.

[68] Ancillary Order at 21.

[69] Am. Opening Br. at 13; Reply Br. at 4.

when it ordered Husband to pay alimony for 84 months beginning from the sale of the marital residence, while separately directing the division of household expenses during the period of shared residence. In the alimony context,

> [t]he Family Court's rulings "will not be disturbed on appeal if: (1) its findings of fact are supported by the record; (2) its decision reflects due consideration of the statutory factors found in [S]ection 1512; and (3) its explanations, deductions and inferences are the product of a logical and deductive reasoning process."[70]

The Family Court's decision reflects appropriate consideration of the factors set forth in Section 1512(c).[71] As the court acknowledged, the parties "will undergo significant financial changes as they implement th[e] [A]ncillary [O]rder."[72] Importantly, despite being divorced, the parties continued to reside together and shared certain living expenses when the trial occurred.[73] That arrangement would change when the marital residence was sold.[74] Acknowledging that Wife could become eligible to receive child support after the parties no longer resided under the same roof,[75] the court's order provided that, "[i]n the event that Wife files and receives child support, Husband's monthly [alimony] obligation shall be offset by the amount of the child support actually paid up to $1,300 per month."[76]

---

[70] *Glanden*, 128 A.3d at 1002 (quoting *Thomas v. Thomas*, 102 A.3d 1138, 1142 (Del. 2014)).
[71] Ancillary Order at 27–29.
[72] *Id.* at 30.
[73] Am. App. to Opening Br. at A14.
[74] *E.g., id.* at A36. For example, Wife testified that once the residence is sold, she intends "to move on and get a home of [her] own." *Id.*
[75] Ancillary Order at 29–30.
[76] *Id.* at 30–31.

Husband's argument implies that the court's order allocating responsibility for the interim mortgage and household expenses effectively required him to support Wife beyond the statutory maximum period. We disagree. The realities of the parties' post-divorce living arrangement provided a sufficient basis for dividing responsibility for payment of the mortgage and household expenses: the parties continued to reside in the same household with their children,[77] and the court's order effectively maintained the status quo while the parties sold the marital residence.

The way in which the court distributed responsibility for the interim household expenses also finds support in the record. First, Wife had not had access to the entirety of the marital residence since April 2022.[78] Second, the division of responsibility was consistent with the parties' longstanding cost-splitting arrangement and with their respective portions of the total household income.[79] In light of these facts, ordering Husband's alimony obligations to commence upon the sale of the home did not constitute an abuse of discretion, nor did the court's distribution of responsibility for interim household expenses constitute a support obligation that extended alimony payments beyond the statutory maximum period.

---

[77] Am. App. to Opening Br. at A14.
[78] Ancillary Order at 4; Am. App. to Opening Br. at A32.
[79] Am. App. to Opening Br. at A33–35; *see supra* note 22.

16

## IV.  CONCLUSION

The Family Court did not have adequate evidence concerning the Policy to direct its continued maintenance.  We therefore REVERSE and REMAND that portion of the Family Court's decision.  On remand, the Family Court may accept any additional evidence or submissions it deems necessary to determine its authority, if any, to direct the continued maintenance of the Policy.

The Family Court has authority to determine when a party's alimony obligations commence, and the court did not abuse its discretion by ordering Husband's obligations to begin upon the sale of the marital residence.  We therefore AFFIRM that portion of the Family Court's decision.

Jurisdiction is not retained.